SNELL &WILMER L.L.P.
Glenn W. Trost (SBN: 116203)
gtrost@swlaw.com
350 Grand Ave., Suite 3100
Los Angeles, CA 90071
(213) 929-2500

ROTHWELL FIGG ERNST & MANBECK, P.C.
Steven Lieberman (*Pro Hac Vice*)
slieberm@rothwellfigg.com
Sharon Davis (*Pro Hac Vice*)
sdavis@rothwellfigg.com
607 14th Street, N.W., Suite 800
Washington, DC 20005
(202) 783-6040

*Attorneys for Defendant Fandango Media, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAXELL, LTD.,<br><br>                    Plaintiff,<br><br>          v.<br><br>FANDANGO MEDIA, LLC,<br><br>                    Defendant. | Case No. 2:17-cv-07534-AG-(SSx)<br><br>The Honorable Andrew J. Guilford<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     February 5, 2018<br>Time:     10:00 a.m.<br>Ctrm:    10D |

**TO THE PLAINTIFF AND ITS ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on February 5, 2018, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 10D of the United States Courthouse, 411 West Fourth Street, Santa Ana, California, defendant Fandango Media, LLC ("Fandango") will and does hereby move this Court for an order dismissing with prejudice the Complaint of plaintiff Maxell, Ltd. ("Maxell").

1        This Motion is brought on the ground that Maxell's Complaint fails to state a

2   claim as a matter of law because the patents asserted in the Complaint claim abstract

3   ideas, a category of patent-ineligible subject matter under 35 U.S.C. § 101.

4        This Motion is based upon this Notice and Motion, the accompanying

5   Memorandum of Points and Authorities, the Court's files in this action, any matter

6   judicially noticeable, and such other documents, arguments and matters as may come

7   to the attention of the Court.

8        Fandango makes the Motion following a conference of counsel pursuant to

9   Central District of California Local Rule 7-3, which took place on December 27,

10  2017.

11  Dated:   January 8, 2018          SNELL & WILMER L.L.P.

12                                    ROTHWELL FIGG ERNST & MANBECK. P.C.

13

14                            By:   */s/ Steven Lieberman*

15                                    Steven Lieberman
                                      Attorneys for Defendant Fandango Media, LLC
16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.    INTRODUCTION................................................................................1

II.   THE PATENTS-IN-SUIT ...................................................................2

    A.   The Rental Expiration Patents (The '522, '942 and '389 Patents) ...........3

    B.   The Video Index Patents (The '810 and '583 Patents)............................6

        1.   The '810 Patent.................................................................6

        2.   The '583 Patent.................................................................8

    C.   The Video List Patent (The '783 Patent) ..................................................9

    D.   The Decoding Patent (The '679 Patent)...................................................11

III.  LEGAL STANDARD ........................................................................13

    A.   Patent Eligibility Under 35 U.S.C. § 101 Is Properly Decided on
        the Pleadings. .........................................................................13

    B.   Patent Eligible Subject Matter Under 35 U.S.C. § 101 .........................13

IV.   ARGUMENT ...................................................................................15

    A.   The Rental Expiration Patents Are Invalid Under 35 U.S.C. § 101. ......15

    B.   The Video Index Patents Are Invalid Under 35 U.S.C. § 101...............19

    C.   The Video List Patent Is Invalid Under 35 U.S.C. § 101. .....................22

    D.   The Decoding Patent Is Invalid Under 35 U.S.C. § 101........................23

V.    CONCLUSION ................................................................................24

# **TABLE OF AUTHORITIES**

## **Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016) ............................................... 14, 15, 21

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ................................................................. passim

*Bancorp Servs., LLC v. Sun Life Assur. Co.*,
   687 F.3d 1266 (Fed. Cir. 2012) ...................................................... 13

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ...................................................... 13

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ....................................................................... 18

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
   758 F.3d 1344 (Fed. Cir. 2014) ...................................................... 14

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) .............................................. 16, 19, 20

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) .............................................. 14, 17, 20

*Genetic Techs. Ltd. v. Merial LLC*,
   818 F.3d 1369 (Fed. Cir. 2016) ...................................................... 13

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ............................................... 21, 22, 23

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
   850 F.3d 1315 (Fed. Cir. 2017) .............................................. 14, 19, 21

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
   No. 2017-1147, 2017 WL 5041460 (Fed. Cir. Nov. 3, 2017) .............. 13, 15, 17

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.*,
   No. 13-cv-3777, 2015 WL 1941331 (S.D.N.Y. Apr. 28, 2015) ............ 16, 24

*Kinglite Holdings Inc. v. Micro-Star Int'l Co. Ltd.*,
   No. 14-cv-3009, 2015 WL 6437836 (C.D. Cal. Oct. 16, 2015) ............ 24

*McRO, Inc. v. Bandai Namco Games Am.*,
   837 F.3d 1299 (Fed. Cir. 2016) .............................................. 14, 17, 20

*Mortg. Grader, Inc. v. Costco Wholesale Corp.*,
   89 F. Supp. 3d 1055 (C.D. Cal. 2015) ............................................. 24

*Move, Inc. v. Real Estate Alliance Ltd.*,
   221 F. Supp. 3d 1149 (C.D. Cal. 2016) ........................................... 20

DEFENDANT'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

*OpenTV, Inc. v. Apple Inc.*,
   No. 15-cv-2008, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016) .................. 14, 16, 24

*O'Reilly v. Morse*,
   56 U.S. 62 (1854) ................................................................................................ 18

*Smartflash LLC v. Apple Inc.*,
   680 Fed. App'x 977 (Fed. Cir. 2017) ...................................................... 14, 15, 17

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) .......................................................................... 13

*Williamson v. Citrix Online, LLC*,
   212 F. Supp. 3d 887 (C.D. Cal. 2016) ................................................................ 3

*Zkey Invs., LLC v. Facebook Inc.*,
   225 F. Supp. 3d 1147 (C.D. Cal. 2016) ...................................................... 22, 23

## **Statutes**

35 U.S.C. § 101 ................................................................................ 1, 2, 13, 24

## **Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................. 1, 13, 24

DEFENDANT'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Fandango Media, LLC ("Fandango") respectfully moves to dismiss the Complaint, because each of the patent claims asserted by Plaintiff, Maxell, Ltd. ("Maxell") is invalid under 35 U.S.C. § 101.  For that reason, Maxell fails to state a claim upon which relief may be granted, and its Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.   INTRODUCTION.

All seven asserted patents broadly relate to managing audio/video content, and are directed to abstract concepts.  Three of the patents purport to cover a scenario in which a user is in the middle of watching a rented movie when the rental period ends – in one patent the user's access to the movie is terminated immediately upon expiration of the rental period, and in the other two patents the user is permitted to finish the movie before access is disabled.  Two other patents purport to cover indexing a movie using thumbnail images of scenes of the movie, and allowing a user to navigate to different scenes of the movie by scrolling through or clicking on the thumbnails in the index.  Another patent allows multiple lists of videos to be associated with the same account and for a user to delete a video from one list (*e.g.* the "mother's" playlist) while not having the same video information deleted automatically from a second list (*e.g.* the "father's" playlist).  The seventh patent claims two "states" for delivery of a conventional decryption key to a user: (1) where the user is given the key to decrypt a downloaded movie only after the download is complete; and (2) where the user is given the key before the download is complete if the user begins playback begins during the download.

Each patent is performed by well-known technology.  None of the patents involves any purportedly new hardware, software, or other computer technology for performing the claimed processes.  And each type of these claimed processes has previously been found invalid as abstract by the Federal Circuit and/or other district courts.

As set forth below, the Supreme Court and Federal Circuit have made clear that patents claiming such abstract ideas without improving the underlying computer technology are ineligible for patent protection.  For these reasons, the asserted patent claims are all invalid under 35 U.S.C. § 101.

## II.  THE PATENTS-IN-SUIT

Maxell's Complaint alleges that Fandango's movie rental service, which is called FandangoNow, infringes claims of seven patents, which fall within the following four groups:[1]

| Patent Group | U.S. Patent No. | Asserted Claims |
|---|---|---|
| Rental Expiration Patents | 8,311,389 (Complaint, Ex. 1, Docket No. 1-1, referred to herein as the "'389 Patent") | 3*, 4, 7*, 8 |
| | 9,083,942 (Complaint, Ex. 2, Docket No. 1-2, referred to herein as the "'942 Patent") | 1*, 2, 4*, 5, 7*, 8, 10*, 11, 13*, 14, 16*, 17, 19*, 20, 22*, 23 |
| | 9,773,522 (Complaint, Ex. 3, Docket No. 1-3, referred to herein as the "'522 Patent") | 13*, 14, 16*, 17, 19*, 20, 22*, 23 |
| Video Index Patents | 6,954,583 (Complaint, Ex. 4, Docket No. 1-4, referred to herein as the "'583 Patent") | 3* |
| | 7,515,810 (Complaint, Ex. 5, Docket No. 1-5, referred to herein as the "'810 Patent") | 1*, 2, 6 |
| Video List Patent | 9,384,783 (Complaint, Ex. 6, Docket No. 1-6, referred to herein as the "'783 Patent") | 2* |
| Decoding Patent | 8,255,679 (Complaint, Ex. 7, Docket No. 1-7, referred to herein as the "'679 Patent") | 7* |

---

[1] The asterisk (*) indicates an independent claim.

In order to make Section 101 motions more manageable where multiple claims of the same patent are asserted, courts have treated one claim as "representative" of other "sufficiently similar" claims. *See, e.g., Williamson v. Citrix Online, LLC*, 212 F. Supp. 3d 887, 896 (C.D. Cal. 2016). Accordingly, for the reasons explained below in Sections II.A. and III.A., for purposes of the instant motion Fandango treats Claim 13 of the '522 Patent as representative of the independent claims in the three Rental Expiration Patents (for the convenience of the Court, Appendix A compares the representative claim to the other asserted independent claims of the Rental Expiration Patents). Because Maxell only asserts a single claim in each of the '583, '783, and '679 Patents, and only one independent claim in the '810 Patent, there is no need to identify a representative claim in those patents, and Fandango addresses each of those asserted claims in turn below.

**A.    *The Rental Expiration Patents (The '522, '942 and '389 Patents)***

The '522, '942 and '389 Patents are in the same patent family, and the three share the same specification. That specification generally describes "disabling reproduction and playback [of audio/video information] after expiration of a prescribed time following recording initiation," based on a first "effective period inside the recording medium" referred to as a "retention period" (essentially, the rental period) and a second "effective period starting with playback initiation" referred to as a "playback permission period" (the time permitted to finish viewing the video after playback is started). '522 Patent at 3:5-18.

Each asserted claim of the Rental Expiration Patents addresses a scenario in which a user begins playback of a video during the rental period (defined in the patent as the "retention period"), but the rental period ends before the user has finished watching the video and before the end of the playback permission period. The claims of the Rental Expiration Patents cover two policies a business might choose to adopt. The first policy is claimed in the '522 and '942 Patents (the '522 Patent has method claims and the '942 Patent has apparatus claims). Under those

patents the user is given a grace period beyond the end of the retention period, thereby allowing the user to finish watching or listening to the video.[2]  *See* '522 Patent at 3:27-32 ("for convenience of users, even with the retention period stopped, a part of information succeeding the stopping location is once allowed for continuous playback up to the end").

The second policy is recited in the '389 Patent, where watching or listening to the content is disabled "concurrently with the stop of the retention period."  That is, there is no grace period and the user cannot continue watching the video (even if he or she is in the middle of it) when the rental period ends.  '389 Patent at 3:23-27 (method claims).

Claim 13 of the '522 Patent, which is representative of the asserted independent claims of the Rental Expiration Patents, recites:

> 13. A method, comprising:
> transmitting audio/video information;
> receiving the audio/video information;
> storing the audio/video information on a storage medium; and
> reproducing the audio/video information from the storage medium
>     according to control information related to the audio/video
>     information,
> wherein the control information includes: a first period for retaining the
>     audio/video information on the storage medium, and a second
>     period, that begins at the start of an initial reproduction of the
>     audio/video information, for enabling a start of a reproduction of the
>     audio/video information stored on the storage medium, and
> wherein, in a case where an elapsed time from a retaining of the
>     audio/video information is within the first period and an elapsed time
>     from an initial reproduction of the audio/video information is within
>     the second period, enabling a reproduction of the audio/video
>     information, and, in a case where a reproduction is started before the
>     end of the first period and the reproduction is continuing at the end

---

[2] The patent claims use the word "reproduction," but we understand Maxell is alleging that the term encompasses watching video content or listening to audio content.  For the purposes of this motion only, Fandango does not dispute that point.

> of the first period, enabling the reproduction to an end of the audio/video information beyond the end of the first period, and thereafter disabling a start of another reproduction of the audio/video information even if an elapsed time from the initial reproduction of the audio/video information is within the second period.

Claim 13 does not claim any new hardware, software, or other computer technology for performing such a process.  Nor are there any limitations in the claim as to any technological implementation or improvement for how to specify or enforce the "control information" (*i.e.*, the retention period and playback period).   Indeed, the only arguably tangible component recited in the claim is a "storage medium" that performs the purely conventional function of storing audio/video information.

The other asserted independent claims of the Rental Expiration Patents differ from the representative claim in only minor respects, and also do not improve any computer software, hardware, or other technology.  (*See* App. A, which presents a side-by-side comparison of representative claim 13 to the other independent claims.) For example, some independent claims determine whether a user should be permitted to finish watching the audio/video information based on a calculation of remaining time in the retention period instead of elapsed time since the retention period began (*see* '522 Patent, claims 16, 22; '942 Patent, claims 4, 10, 16, 22), while other independent claims calculate the elapsed time from the time the information is stored instead of from the time it is retained (*see* '522 Patent, claim 19; '942 Patent, claims 7, 19).  These variations are directed solely to how one calculates the two claimed time periods, and thus does not change the patent-eligibility analysis.  The other variations between the asserted claims and the representative claim are also irrelevant to the eligibility analysis: (1) allowing the audio/video information to be temporarily stored (*see, e.g.,* '942 Patent, claim 10), (2) "allowing" reproduction instead of "enabling" reproduction (*see, e.g., id.* at claim 1), and/or (3) "recording" the audio/video information instead of "storing" the information.  *See, e.g.,* '389 Patent, claim 3; *see also* App. A.  Storing, recording, and controlling access to information

are all routine, well-known computer functions, and none of these – whether considered in isolation or in combination with other claim elements – constitutes an improvement to computer technology.

Likewise, the asserted dependent claims of the Rental Expiration Patents also do not differ from the representative claim in a manner that would affect the patent-eligibility analysis.  Specifically, the asserted dependent claims fall into two general categories: (1) the dependent claims of the '942 and '522 Patents allow for the post-rental grace period only as long as the user does not stop, rewind, or pause the reproduction; and (2) the dependent claims of the '389 Patent require that the retention period (or access period) be longer than the playback permission period.  These limitations do not require improve the functioning of a computer or otherwise transform ineligible subject matter into eligible subject matter; they are merely variations on video rental and playback policies a business might choose to adopt.

## B.    *The Video Index Patents (The '810 and '583 Patents)*

The '810 Patent is a continuation of the '583 Patent, and the two patents share the same specification.  The Video Index Patents generally describe displaying a list of "representative images for scenes included in a video picture" (*i.e.*, an index of images of scenes from a video), and each patent claims different ways a user may interact with that list.  *See* '810 Patent at Abstract.

### 1.    **The '810 Patent**

The '810 Patent describes an abstract "scrolling" interaction with the list.  Specifically, if the total number of representative images does not fit on the same screen, the '810 claim allows a user to scroll through the index, where a new image appears in place of an image displayed previously.  As the user inputs a command (*e.g.*, "pushing a key") to scroll through the list of images, an input of short duration results in "fine scrolling control" where "as the key pushing duration increases, the scrolling speed is correspondingly accelerated."   '810 Patent at 7:10-19.  Claim 1 of the '810 Patent broadly claims this scrolling function:

6

1. A video picture access system, comprising:
means for inputting a command;
means for displaying a list of time-serial representative images of scenes
    included in a video picture; and
means for scrolling the list by displaying a new representative image
    instead of the representative image of the representative image
    already displayed earlier when a total number of the time-serial
    representative images exceed a maximum number of representative
    images which can be displayed on a display screen;
wherein the representative image added newly for display is a
    representative image of a scene distanced for a given time in
    conformance to the command inputted via the inputting means.

Claim 1 of the '810 Patent does not claim any new hardware, software, or other computer technology for implementing such a system. Indeed, the "means for inputting a command" limitation is described in the specification as nothing more than a conventional "input device [] such as a keyboard, a pointing device typified by a mouse, a touch panel or the like." '810 Patent at 3:53-55. The "means for displaying" limitation is described in the specification as a conventional "display device which may be constituted by a CRT (Cathode-Ray Tube), an LCD (Liquid Crystal Display) device or the like and which is designed for displaying video pictures outputted from a computer." *Id.* at 3:49-52. Likewise the "means for scrolling" limitation is described in the specification as a well-known "scroll display function," such that "when there exist[s] too many representative images to be displayed on the screen area, these representative images may be displayed in succession to one another." *Id.* at 5:36-39. As such, there is no technical concept recited in claim 1 of the '810 Patent beyond the use of well-known computer components to perform their conventional functions.

With respect to the asserted dependent claims of the '810 Patent, Claim 2 of the '810 Patent contains features similar to claim 1 of the '583 Patent, discussed below, and claim 6 simply specifies the command be "effectuated in terms of a time

duration."   Accordingly, these features are insufficient to add significantly more to representative claim 1 of the '810 Patent or affect the patent-eligibility analysis.

### 2.   The '583 Patent

The specification of the Video Index Patents further describes a second type of abstract interaction with the list – specifically, selecting an image and expanding it to a "full screen."  As shown in the figures from the '583 Patent to the right, Fig. 6A depicts an index of small representative images (102) corresponding to scenes in a movie that appears as a list on the same screen where the video is playing (100).  When the user selects one of the



representative images in the list (the selection indicated by the bold outlining in the list (102) of Fig. 6A), the corresponding scene from the movie begins to play in a reduced-size, and the reproduction is gradually expanded (or "transit[s] temporally gradually") to a full screen reproduction (*see* expansion of selected thumbnail image between Figs. 6B-6C).  *See also* '583 Patent at 10:16-25.   The specification does not describe how this expansion is accomplished, nor does it disclose any technology for doing so.

Claim 3 of the '583 Patent is directed to this select and expand to full screen interaction with the list:

3. A video picture access method, comprising the steps of;
displaying in superposition on a video picture being displayed on a
    display screen a representative image list containing at least one
    representative image of a reduced size which corresponds to a scene
    included in said video picture;
making into appearance said representative image list while extending
    stepwise a display field of said representative image list over a
    predetermined time duration;
starting reproduction of a video picture of a scene corresponding to a
    representative reduced-size image selected by an operator to be next

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

displayed from said representative image list at a display position of said selected representative reduced-size image with a size thereof; and

causing said reproduction to transit temporally gradually to a full screen reproduction in which said video picture is displayed substantially over a whole surface of said display screen.

Claim 3 of the '583 Patent does not claim any new hardware, software, or other computer technology for performing such a process.  Indeed, the only tangible component recited in claim 3 is a conventional "display screen," and the claim recites the broad functions of "displaying," "making into appearance," "starting reproduction," and "transit temporally gradually to a full screen reproduction" without any further specificity or technological implementation.

**C.    *The Video List Patent (The '783 Patent)***

The abstract of the Video List Patent describes the ability "to provide a recording and reproducing device that allows a user to select and manage arbitrary play lists…."  '783 Patent at Abstract.  The '783 Patent highlights this functionality in the context of an example where there is a playlist for a "mother" and a second playlist for a "father."  As shown in reproduced Figs. 6 and 7 of the '783 Patent, two menu areas ("601" Mother and "701" Father) each display a list of thumbnail images (502, 503) corresponding to "play list information" #1 and #2, respectively.  *Id.* at 5:54-56.  The '783 Patent describes that the "'mother' can use the menu display tag for mother


FIG.6


FIG.7

9

601 as a folder dedicated to herself, and freely register and delete data to be reproduced," and the "'father' can use the menu display tag for father 701 as a folder dedicated to himself, and freely register and delete data to be reproduced." *Id*. at 6:4-18.  That is, if the father and mother each have the same video on their respective lists (*e.g.* **502**), the father can delete the video from his list without that video being automatically deleted from the mother's list.

Claim 2 of the Video List Patent broadly claims this ability to have two lists of "video information" that are "group[ed]" according to different "classifications" (*e.g.*, lists of videos, such as a playlist), and displaying "thumbnails" corresponding to the video information for each group in two different areas of a menu.  *See* '783 Patent at claim 2.  Lastly, the claim allows a user to selectively delete video information from one group without affecting the video information listed in the second group. *Id*.  Claim 2 provides:

> 2. A method comprising:
> reproducing selected video information from among a plurality of video
>     information recorded on a recording medium by the recording unit,
> displaying, on a display device, a user interface for a user to select
>     desired video information to be reproduced from among the plurality
>     of video information recorded on the recording medium by the
>     recording unit;
> reproducing the selected video information read out from the recording
>     medium, wherein a first area and a second area are displayed within
>     a menu display,
> wherein the first area is configured to display at least first indication
>     associated with a first group of video information for a first
>     classification and second indication associated with a second group
>     of video information for a second classification different from the
>     first classification, and
> wherein the second area is configured to display thumbnails
>     corresponding to video information recorded on the recording
>     medium by the recording unit;
> wherein, when the first indication shown in the first area is selected,
>     displaying, in the second area, a first group of thumbnails
>     corresponding to the first group of video information;

10

> wherein, when the second indication shown in the first area is selected, displaying, in the second area, a second group of thumbnails corresponding to the second group of video information,
> wherein, even if one video information recorded on the recording medium included in both the first group of video information and the second group of video information is deleted from the first group of video information, the one video information continue to be included in the second group of video information.

There are no technological details recited in claim 2 as to how the groups of video information are stored and independently managed such that deleting video information from one group does not affect the second group. Nor is there any specialized or specific technology required to implement the method of claim 2, which as shown above, only limits the method steps to a well-known "recording medium," "recording unit," and "display device," which are used to perform the conventional functions of "recording," "reproducing," and "displaying" lists of video information.

### D.    *The Decoding Patent (The '679 Patent)*

The abstract of the Decoding Patent provides: "By deciding procedures for downloading content data and downloading key information, a safe service is provided for a content distributor and a method which can start playback before completion of the downloading of the content data is provided, thereby providing a technique easy for a user." '679 Patent at Abstract. Claim 7 of the Decoding Patent broadly claims downloading encoded video content and decoding the content. The patent does not teach or claim new encoding, decoding, or downloading technology. Indeed, the "background art" section describes a conventional encryption and decryption scenario where "[i]n the case of a service for providing a content such as video image, audio sound, or the like for a charge, there is the case where the content has been encrypted," and "[w]hen the content is read out from the storing function and played back, the encryption is decrypted by using key information obtained separately, thereby playing back the content. *Id.* at 1:31-37.

11

Instead, the claim describes two "states" controlling when the key for decoding the content is obtained in relation to when playback of the video starts.  In the first state, the key for decoding content is obtained after download of the content is complete.  In a second state, the key information for decoding content is obtained before download of the content is complete.  In both states, the key for decoding content may be provided "[w]hen the content is read out," (*e.g.*, played) in the conventional manner as described in the background art section.  *Id.* at 1:31-37. Claim 7 provides:

> 7. A content playback method in a content playback apparatus which downloads and playbacks content data, comprising the steps of:
>> downloading said content data which is encoded;
>> obtaining key information for decoding said content data;
>> storing said downloaded content data;
>> decoding an encryption of said stored content data by using said key information;
>> in a <u>first state</u>, obtaining said key information <u>after</u> all downloads of said content data have been completed, and decoding said encryption of said content data to enable a playback;
>> in a <u>second state</u>, if said playback instruction is received from an input unit during the downloading of said content data, receiving key information <u>before all</u> downloads of said content data have been completed, and decoding said encryption of said content data to enable a playback before all downloads of said content data have been completed.

(emphasis added).

Claim 7 recites the conventional steps of downloading encrypted data, obtaining key information to decode the data, storing the encrypted data, and decoding the encrypted data using the key information.  There is no specific technology required to implement the method of claim 7 other than a conventional "content playback apparatus which downloads and playbacks content," nor are there any technical details provided as to the implementation of the "first state" or "second

state" that dictate whether the key information is obtained before or after the download of the encrypted content has completed.

## III.   LEGAL STANDARD

### A.   *Patent Eligibility Under 35 U.S.C. § 101 Is Properly Decided on the Pleadings.*

Patent eligibility under 35 U.S.C. § 101 is a question of law that is properly and frequently decided on a motion to dismiss for failure to state a claim.  *See Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713 (Fed. Cir. 2014); *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1346 (Fed. Cir. 2016).  Nor does evaluation of a patent claim's subject matter eligibility under § 101 require claim construction. *See Genetic Techs*, 818 F.3d at 1374; *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012) (claim construction not prerequisite for determining § 101 motion if the Court has a "full understanding of the basic character of the claimed subject matter").

### B.   *Patent Eligible Subject Matter Under 35 U.S.C. § 101*

In what has become known as the *Alice* test, the Supreme Court articulated a two-step inquiry to determine whether claims are directed to patent-ineligible concepts pursuant to 35 U.S.C. § 101.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).

The first step in *Alice* is to "determine whether the claims at issue are directed to one of those patent-ineligible concepts."  *Id*. (citation omitted).  "The Supreme Court and [the Federal Circuit] have held that a wide variety of well-known and other activities constitute abstract ideas."  *Intellectual Ventures I LLC v. Erie Indem. Co.*, No. 2017-1147, 2017 WL 5041460, at *3 (Fed. Cir. Nov. 3, 2017) (citation omitted). Numerous cases have held that claims purporting to cover the manipulation of data

on computers (including controlling access to or indexing that data) are directed to abstract ideas. *See, e.g. OpenTV, Inc. v. Apple Inc.*, No. 15-cv-2008, 2016 WL 344845, at *5 (N.D. Cal. Jan. 28, 2016) (controlling the right to access content is "a long-standing and well-understood business practice that predates the internet."); *Smartflash LLC v. Apple Inc.*, 680 Fed. App'x 977, 982-983 (Fed. Cir. 2017) ("conditioning and controlling access to data based on payment" abstract); *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017), *petition for cert. filed* (U.S. Nov. 9, 2017) (No. 17-697) ("organizing and accessing records through the creation of an index-searchable database" abstract); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) ("organizing information through mathematical correlations and is not tied to a specific structure or machine" abstract); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1263 (Fed. Cir. 2016) (using a graphical user interface on a generic computer for listing content for streaming abstract). The Federal Circuit has found claims directed to improvements to computer functionality are patent eligible, but only if "the focus of the claims is on the specific asserted improvement in computer capabilities" and not "a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Smartflash*, 680 Fed. App'x at 982 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). For example, in *Enfish*, the claims were directed to an "improvement of an existing technology" because the claimed invention "achieves other benefits over conventional databases, such as increased flexibility, faster search times, and smaller memory requirements." 822 F.3d at 1337. Similarly, in *McRO, Inc. v. Bandai Namco Games Am.* the "claimed process use[d] a combined order of specific rules that render[ed] information into a specific format that is then used and applied to create desired results: a sequence of synchronized, animated characters", which was "a patentable, technological improvement over the existing, manual 3-D animation techniques." 837 F.3d 1299, 1315-1316 (Fed. Cir. 2016).

1  If the claims are directed to an abstract concept, the claims may nonetheless be

2  eligible for a patent only if they contain an inventive concept.  *See, e.g., Affinity Labs*,

3  838 F.3d at 1258.  The court at this second step of the *Alice* test "consider[s] the

4  elements of each claim both individually and 'as an ordered combination' to

5  determine whether the additional elements 'transform the nature of the claim' into a

6  patent-eligible application."  *Alice*, 134 S. Ct. at 2355 (citation omitted).  "At step

7  two, more is required than well-understood, routine, conventional activity already

8  engaged in by the [relevant] community, which fails to transform the claim into

9  significantly more than a patent upon the ineligible concept itself."  *Smartflash*, 680

10  Fed. App'x at 981 (citations and internal quotation marks omitted).  Merely reciting

11  generic computer components, and requiring that the abstract concept be performed

12  on a computer, does not constitute an inventive concept.  *Intellectual Ventures I*, 2017

13  WL 5041460, at *6.

14  **IV.    ARGUMENT**

15      **A.    *The Rental Expiration Patents Are Invalid Under 35 U.S.C. § 101.***

16      The claims of the three Rental Expiration Patents are directed to the abstract

17  idea of enforcing the expiration of access periods for audio/video content.  Namely,

18  the claims provide for viewing or listening to ("reproduction of") audio/video

19  information "according to control information related to the audio/video

20  information," where such control information includes a "first period for retaining"

21  the audio/video information ("retention period", such as a rental period) and a

22  "second period [] that begins at the start of an initial reproduction" of the audio/video

23  information ("playback permission period").  '522 Patent claim 13.  The claims only

24  vary in what happens when a user is viewing the video when the retention period

25  ends – the viewing is either terminated immediately, or the user is permitted to

26  complete that one viewing and any further access is denied.

27      The "focus" of the Rental Expiration Patents and of their claims' "character as

28  a whole" is how to enforce the expiration of an access period to audio/video content.

1   *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  As is

2   routinely recognized by this Court and others, restricting viewing of information by

3   enforcing certain controls – here, how to enforce a retention period where playback is

4   ongoing when the period ends – is no more than a conventional, abstract concept.

5   *See, e.g.*, *OpenTV*, 2016 WL 344845, at *5 ("[t]he practice of controlling access to

6   information by verifying credentials…is neither novel nor specific to interactive

7   television systems"); *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No.

8   13-cv-3777, 2015 WL 1941331, at *12 (S.D.N.Y. Apr. 28, 2015) ("The concept of

9   protecting access to otherwise unprotected digital information or property by the

10  enforcement of rules is a conventional concept").  The need to enforce access periods

11  is a longstanding concept that has been used in libraries or brick-and-mortar movie

12  rental stores; it is not unique to a computer environment.  While the claims do not

13  recite a "computer," to the extent they limit the use of that concept to a computer or

14  other technology environment the concept is no less abstract, and there is no

15  suggestion in the claims or the patent specification that they improve the operation of

16  any of the technology involved.

17        Nor is there anything in the asserted claims to save them under step two of

18  *Alice*.  The claimed steps of: (1) receiving video information and information to

19  control access to the video, (2) recording that information, and (3) allowing or

20  denying viewing of the video based on a simple calculation of control information,

21  whether considered individually or as an ordered combination, are nothing more than

22  basic steps to accomplish the abstract idea.  None of those steps add anything

23  "significantly more" than the abstract idea of enforcing an access period, nor do they

24  solve a technical problem.  *Alice*, 134 S. Ct. at 2355.  The asserted claims of the '522

25  and '389 Patents are method claims that do not recite any components beyond a

26  "storage/recording medium," and the '942 Patent requires only generic technology

27  such as a "receiver", "storage", and a "reproducer."  *See, e.g.,* '942 Patent at claim 1;

28  '522 Patent at claim 13; '389 Patent at claim 3.  These claims do not recite any

specific or specialized hardware components or specialized technology for implementing the alleged invention, and the specification never suggests that any such claimed "components are non-generic." *Intellectual Ventures I*, 2017 WL 5041460, at \*6.

Moreover, the asserted claims of all three patents merely recite "well-understood, routine, conventional activity" of transmitting, receiving, storing, and viewing data – broadly claiming the abstract idea of enforcing access periods using a simple mathematical calculation of control information, using addition and subtraction. *Smartflash*, 680 Fed. App'x at 983 (finding "routine computer activities," such as storing, retrieving, and transmitting data, "are insufficient for conferring patent eligibility."). Unlike *Enfish*, which claimed a specific, improved method of indexing, or *McRO*, which claimed a specific, improved method of automating 3-D lip synchronization, the claims here do not recite a specific or improved method of transmitting data, receiving data, storing data, or reproducing data. In fact, the simple calculation here of how much time remains in an access period, or how much time elapsed since the access period started is the exact calculation a human, such as a librarian, would have done previously.

The three patents together recite two different policies a business could adopt to enforce retention and playback permission periods for a video after the rental period expires: (1) the user is permitted to finish watching the video if he began watching it during the rental period (the '522 and '942 Patents); or (2) the user is not permitted to finish watching that video (the '389 Patent). In all three patents, the issue is whether to allow a user to finish watching a video beyond the end of the retention period but within the playback permission period. And in all three patents, the claims fail to recite any technological means or requirements beyond those results themselves. These are precisely the sort of results-oriented, non-technological claims that the Federal Circuit has repeatedly held is ineligible for patent protection. *See, e.g., McRO*, 837 F.3d at 1312 ("The abstract idea exception prevents patenting a

17

result where 'it matters not by what process or machinery the result is accomplished'") (quoting *O'Reilly v. Morse*, 56 U.S. 62, 113 (1854)).

The other asserted independent claims of the Rental Period Patents add nothing beyond the claimed abstract idea. *See* App. A. Claims that record instead of retain video information, or provide the ability to only "temporarily store" the video information, use only conventional computer processes. *See, id.* Variations in how to calculate the second period or how to calculate whether playback/access is allowed do not provide an inventive concept – the calculations are themselves abstract. *See* '522 Patent, claims 16, 22; '942 Patent, claims 4, 10, 16, 22 (performing calculation based on remaining time instead of elapsed time); '522 Patent, claim 19; '942 Patent, claims 7, 19 (calculating elapsed time from time of information is stored instead of from time it is retained); *see also Bilski v. Kappos*, 561 U.S. 593, 609-11 (2010).

Likewise, other differences between the asserted independent claims and the representative claim are insignificant to a § 101 analysis: (1) allowing the audio/video information to be temporarily stored (*see, e.g.,* '942 Patent, claim 10), (2) "allowing" viewing instead of "enabling" viewing (*see, e.g., id.* at claim 1), and/or (3) "recording" the audio/video information instead of "storing" the information. *See, e.g.,* '389 Patent, claim 3. Storing, recording, and controlling access to information are all routine, well-known computer functions, and none of these in isolation or in combination with other claim elements, constitute an improvement to computer hardware, software, or other technology.

The asserted dependent claims of the Rental Period Patents do not add "significantly more" to the claims beyond the abstract idea. In the '942 and '522 Patents (which allow the user to finish watching the video if the playback is ongoing when the retention period ends), all of the asserted dependent claims only add a further condition that the user can finish the video only as long as the user does not pause, stop, or rewind the video. *See, e.g.,* '942 Patent at claim 2. This limitation is also only directed to enforcing an access period – it does not add "significantly more"

1  beyond the abstract idea.  The dependent claims of the '389 Patent only require that

2  the retention period be longer than the playback period.  This is a common sense

3  limitation, as an access period for playing a video after starting playback would

4  typically be shorter than the length of the entire rental.  This limitation does not add

5  anything inventive to the claims, solve any technical problems, or provide a unique

6  method for accomplishing the abstract concept.  As such, the asserted claims of the

7  Rental Expiration Patents are invalid under § 101.

8         **B.**  *The Video Index Patents Are Invalid Under 35 U.S.C. § 101.*

9        The two Video Index Patents are directed to the abstract concept of navigating

10  through a video using an index, not unlike using the table of contents to navigate

11  through the sections of this motion.  *See, e.g.*, '810 Patent at Abstract.  In both Video

12  Index Patents, the index is composed of representative images that correspond to

13  scenes in the video, thereby enabling a user to navigate to a desired scene in the video

14  using the index.  In the '810 Patent, the user is able to navigate through the index by

15  scrolling quickly or slowly through the representative images in the index.  *See id.* at

16  10:2-15.  In the '583 Patent, when a user selects one of the representative images in

17  the index, a reproduction of the video starting at the corresponding time in the video

18  begins in a reduced-size and gradually expands to full screen.  *See* '583 Patent at

19  10:7-25.  The claims of the Video Index Patents are simply and broadly directed to

20  navigating in a video index, which courts have recognized as an abstract concept.

21  *See, e.g.*, *Intellectual Ventures I*, 850 F.3d at 1325 (finding claims directed to

22  "methods and apparatuses that use an index to locate desired information in a

23  computer database" ineligible) and at 1327 ("organizing and accessing records

24  through the creation of an index-searchable database, includes longstanding conduct

25  that existed well before the advent of computers and the Internet"); *Elec. Power Grp.*,

26  830 F.3d at 1353 (finding "collecting information, including when limited to

27  particular content" is an abstract idea).

28

The fact that the data may be displayed in an interactive manner is only an "ancillary part of [abstract processes of collecting and analyzing information]." *Id.* at 1354.  In *Move, Inc. v. Real Estate Alliance Ltd.*, the claims "directed to a method for collecting and organizing information about available real estate properties and displaying this information on a digital map that can be manipulated by the user" were found patent ineligible.  221 F. Supp. 3d 1149, 1162 (C.D. Cal. 2016).  Indeed, much like the interactive zoom feature in the map claims at issue in *Move*, the interactive features of the index claims are "commonsensical" because they simply allow a user to accurately orient herself around the contents (*i.e.*, scenes) of a video file while watching the video.  *Id.* at 1162-63; *see also* '810 Patent at 2:40-50 (describing object of the invention to provide "scene selecting or indexing operation . . . without impairing or disturbing user's comfortableness of viewing continuously the video picture").

Nothing in the claims or specification suggests that the claimed inventions are directed to improving the computers or other technology on which the claimed invention is performed.  Unlike *Enfish*, these patents do not describe an improved method of indexing, and unlike *McRO*, the claims do not describe a specific method for improving technology.  Forming an index with thumbnail images, scrolling through the images, and expanding to full screen are all known computer functions.  Accordingly, the plain "focus" and "character as a whole" of the claims of the Video Index Patents show that they are directed to a patent-ineligible concept and fail at *Alice* step one.  *Elec. Power Grp.*, 830 F.3d at 1353.

At step two of *Alice*, the limitations of the Video Index Patents, considered individually and as an ordered combination, do not recite significantly more than the abstract idea, and are not directed to a technical solution to a technical problem.  The only hardware recited in any of the asserted claims of the Video Index Patents is a generic "display screen" in claim 3 of the '583 Patent.  Claim 3 otherwise recites conventional computer functions of (1) displaying a representative image list (*i.e.*,

index) and a video, (2) skipping to a different part of a video if the user selects a corresponding index entry, and (3) displaying the video in a reduced size and expanding it to full screen. *See, e.g.*, *Affinity Labs*, 838 F.3d at 1263 (using a graphical user interface on a generic computer for listing content for streaming is directed to abstract idea).

Claim 1 of the '810 Patent merely recites the steps of (1) displaying an index, and (2) scrolling through the index in an amount proportionate to a user's input command. Simple indexing claims contain no inventive concept and are not patent-eligible. *See, e.g.*, *Intellectual Ventures I*, 850 F.3d at 1327 ("organizing and accessing records through the creation of an index-searchable database, includes longstanding conduct that existed well before the advent of computers and the Internet"). While the '810 Patent claims recites "means for" performing these functions, the specification only describes generic computer components and inputs. *See* '810 Patent Fig. 1 and 3:46-4:6 (describing general purpose computer); *see also id.* at 8:62-66 ("Additionally, in the foregoing description of the illustrated embodiments of the present invention, it has been assumed that the user's commands are inputted with the aid of a keyboard and/or a pointing device such as a mouse used widely in personal computers"); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 610 (Fed. Cir. 2016) (upholding patent ineligibility finding of patent that included multiple "means for" claims); *Alice*, 134 S. Ct. 2347 (invalidating patent claims with "means for" language that lacked specific computer functionality). Thus, the claims recite only generic components and computer functionality.

The asserted dependent claims of the '810 Patent (which claim the ability to quickly or slowly scroll through the index) do not add "significantly more" beyond the abstract idea. Claim 2 adds that when the user selects a representative image, the reproduction begins where the representative image was, and extends stepwise "until the selected representative image has occupied the whole area of the display screen." With this added limitation, Claim 2 becomes the same as Claim 1 in the '583 Patent

21

1 and is abstract for the same reasons as that claim.  Claim 6 only further specifies that

2 the command to quickly or slowly scroll through the index is "effectuated in terms of

3 a time duration for which the inputting means is continuously actuated" – *i.e.,* how

4 long the key is pressed determines whether the scrolling is quick or slow.  These

5 limitations do not add "substantially more" to the abstract concept, do not solve any

6 technical problems, nor do they implement any technical solution for accomplishing

7 the abstract concept.  As such, the Video Index Patents are invalid under § 101.

8       **C.**    ***The Video List Patent Is Invalid Under 35 U.S.C. § 101.***

9       Claim 2 of the Video List Patent is broadly directed to the abstract concept of

10 classifying and sorting information into groups – namely, creating lists of videos.  *See*

11 '783 Patent at Abstract.  Claim 2 generally describes the steps of (1) reproducing

12 video information, (2) displaying the videos on a screen, (3) providing two areas for

13 the displaying video information, and (4) allowing the user to manage two groups of

14 videos displayed in those areas.  The last "wherein" clause of claim 2 specifies the

15 "arbitrary" grouping aspect, where if one video is included in both groups, and one

16 video "is deleted from the first group of video information, the one video information

17 continue[s] to be included in the second group of video information." *Id.* at claim 2.

18 Indeed, Maxell further highlights this arbitrary grouping concept as the focus of the

19 asserted claim in its Complaint, where Maxell identifies the FandangoNow website's

20 "groups of video information," where "a user can view video information in a second

21 group of information even if the video information, included in both the first and

22 second group of information and recorded on the recording medium, is deleted from

23 the first group of information" as purportedly infringing claim 2 of the '783 Patent.

24 (Compl., Docket No. 1, at ¶ 91.)

25       The Federal Circuit and other courts have already found that the classification

26 and storage of data based on such groupings (*e.g.*, a video "list" or "playlist") is an

27 abstract concept.  *See, e.g.*, *In re TLI Commc'ns*, 823 F.3d at 611; *Zkey Invs., LLC v.*

28 *Facebook Inc.*, 225 F. Supp. 3d 1147, 1153 (C.D. Cal. 2016) (finding claims directed

to "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" are patent ineligible).  Like the *TLI* patent, the Video List Patent is not directed to improving the function of a computer, rather it performs the most basic function of a computer – recording, displaying, and organizing.  *In re TLI Commc'ns*, 823 F.3d at 612.  Also like *TLI*, the '783 claims only require a "recording unit", "recording medium", and a "display device," and do not specify any "technical details for the tangible components."  *See id.* at claim 2.  Management of groups of information is a longstanding "method[] of organizing human activity," and is patent ineligible.  *In re TLI Commc'ns*, 823 F.3d at 613.

At step two of *Alice*, there is no inventive concept in the claim.   Even if the claim here, like in *Zkey* would allow users to "provide[] unique, customizable features to each user such as giving them granular control over each data element and the content of their profiles," each of the computer functions here are "well-understood, routine conventional activities previously known in the industry."  *Zkey*, 225 F. Supp. 3d at 1156 (citation omitted).  Generic computer being utilized to do "electronic recordkeeping – one of the most basic functions of a computer" is not inventive.  *Id*.  The claim simply recites an abstract idea and instructs a user to apply it on a computer – this is not enough to be patent eligible.  *Alice*, 134 S. Ct. at 2357.  As such, the Video List Patent is invalid under § 101.

### D.   *The Decoding Patent Is Invalid Under 35 U.S.C. § 101.*

The '679 Patent is also patent ineligible for broadly claiming an abstract concept – decryption of data using key information.  Claim 7 of the '679 Patent recites the steps of (1) downloading encrypted data, (2) obtaining the key to decode the data, (3) storing the data, (4) decoding the data.  The claim further controls when the key is obtained in relation to when the user begins playback of the encrypted data.  If the user begins playback before download is complete, the key is received during the download; otherwise, the key is only obtained after download is complete.  *See id*.  An abundance of district courts, including in this district, have found patents directed

to such decryption processes to be patent ineligible.  *See Kinglite Holdings Inc. v. Micro-Star Int'l Co. Ltd.*, No. 14-cv-3009, 2015 WL 6437836, at *8 (C.D. Cal. Oct. 16, 2015) (court found patent ineligible because claimed steps "simply 'implicate the concept of authentication or verification of a request"); *Intellectual Ventures II*, 2015 WL 1941331, at *12 ("[T]he process of controlling access to decrypted portions of distributed data describes nothing more than an abstraction, completely lacking any corporeal application or particular function."); *OpenTV*, 2016 WL 344845, at *5 ("[T]he '081 patent claims are also not necessarily rooted in computer technology to solve a problem 'specifically arising' in the realm of computer and content security. These claims merely apply the well-known concept of credential verification to web-based interactive television applications.").

Nor do the claims contain "significantly more" under *Alice* step two that would constitute an inventive concept and allow Maxell to patent an ineligible concept.  The asserted claim does not recite any computer components at all, and the specification at best only recites generic computer components.  '679 Patent at 2:1-12 (specification lists a "receiver", "interface unit", "storage unit", and a "control unit" to perform the claims); *Mortg. Grader, Inc. v. Costco Wholesale Corp.*, 89 F. Supp. 3d 1055, 1064 (C.D. Cal. 2015).  Decrypting data is plainly abstract in view of prior case law, and controlling when the key to decrypt is obtained requires only basic computer functionality.  Considered as a whole and an ordered combination, the claim does not add anything beyond the generic steps of decrypting downloaded data, and is therefore invalid under 35 U.S.C. § 101.

## V.    CONCLUSION

For the reasons set forth above, Fandango respectfully requests that the Court dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

Dated: January 8, 2017

By: */s/ Steven Lieberman*

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Steven Lieberman
Sharon Davis
ROTHWELL, FIGG, ERNST &
MANBECK, P.C.
607 14th Street, NW; Suite 800
Washington, DC  20005
202-783-6040

Glenn W. Trost
SNELL &WILMER L.L.P.
350 Grand Ave., Suite 3100
Los Angeles, CA 90071
(213) 929-2500

*Attorneys for Defendant*
*Fandango Media, LLC*

DEFENDANT'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)