UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

| Present: The Honorable | ANDREW J. GUILFORD | | |
|---|---|---|---|
| Lisa Bredahl | Not Present | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | | |

**Proceedings:** [IN CHAMBERS] ORDER REGARDING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (DKT. 44)

On October 13, 2017, Plaintiff Maxell, Ltd. filed this action for patent infringement, alleging that Defendant Fandango Media, LLC infringes seven U.S. patents. (*See* Dkt. 1.) On January 9, 2018, Defendant filed a Motion to Dismiss for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), arguing that all of the asserted claims of the asserted patents are invalid under 35 U.S.C. § 101. (Dkt. 44.) Plaintiff has filed an Opposition (Dkt. 47) and Defendant has filed a Reply (Dkt. 50).

After Plaintiff filed its Opposition, the parties also filed a Joint Stipulation agreeing that Plaintiff could file a supplemental opposition brief regarding a recent Federal Circuit decision. (Dkt. 48.) Plaintiff filed its supplemental brief. (Dkt. 49.) Each party has since filed an additional Notice of Supplemental Authority related to recent Federal Circuit decisions. (Dkts. 54, 60.) A hearing was held on the Motion on March 13, 2018. (Dkt. 63.)

The parties' earlier Joint Stipulation regarding the supplemental opposition (Dkt. 48) is GRANTED. Defendant's Motion to Dismiss (Dkt. 44) is DENIED-IN-PART and GRANTED-IN-PART.

**1. Background**

Plaintiff alleges that Defendant infringes various claims of U.S. Patent Nos. 8,311,389 ("the '389 Patent"); 9,083,942 ("the '942 Patent"); 9,773,522 ("the '522 Patent"); 6,954,583 ("the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

'583 Patent"); 7,515,810 ("the '810 Patent"); 9,384,783 ("the '783 Patent"); and 8,255,679 ("the '679 Patent"). (*See generally*, Dkt. 1.) Each of the asserted patents claims foreign priority to one or more earlier Japanese patent applications. Generally speaking, Defendant states that the asserted patents relate to "[user experience] innovations for Internet-based video rental software . . . includ[ing] both novel graphical designs that 'ensure comfortableness of the user,' as well as functional elements that reduce 'inconvenience of the users' while balancing the rights of copyright holders." (Dkt. 47 at 1 (citation omitted).) Defendant further states, "the asserted patents address how Internet-based video rental software can provide users with a seamless, intuitive, and enjoyable viewing experience while still protecting the content owners." (*Id.*) In contrast, Plaintiff states, "all seven patents broadly relate to managing audio/video content, and are directed to abstract concepts." (Dkt. 44 at 1.) The asserted patents will be discussed in more detail in the Analysis section of this Order.

**2.      Legal Standard**

    **2.1      Motion to Dismiss Under Rule 12(b)(6)**

A court will grant a motion to dismiss if the complaint does not allege claims upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to provide the opposing party notice of the claim and the grounds upon which it rests. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376 (Fed. Cir. 2017). Bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

### 2.2 Patent Eligibility Under 35 U.S.C. § 101

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. "[T]his provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). The Supreme Court has established a two-part test for evaluating patent eligibility under § 101. "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296–97 (2012)). If so, courts move to the second step and ask, '[w]hat else is there in the claims before us?'" *Id.* To answer this second question, courts "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1297–98). "We have described step two of this analysis as a search for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1294). This second step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014). The Supreme Court has made clear, for example, that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358.

Patent eligibility is a question of law that may include underlying questions of fact. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, No. 2017-1452, 2018 WL 843288, at *5 (Fed. Cir. Feb. 14, 2018) ("While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination."); *accord Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). The Federal Circuit has affirmed district court's conclusions of patent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

ineligibility under § 101 at the motion to dismiss stage. *See, e.g.*, *Content Extraction*, 776 F.3d at 1349; *see also id.* ("Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101."); *Automated Tracking Sols., LLC v. Coca-Cola Co.*, No. 2017-1494, 2018 WL 935455, at *5 (Fed. Cir. Feb. 16, 2018) (non-precedential). But recent Federal Circuit decisions have emphasized that patent eligibility can be determined on a motion to dismiss "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 2018 WL 843288, at *2; *see also Automated Tracking*, 2018 WL 935455, at *5 (affirming grant of motion to dismiss for lack of patent eligible subject matter and finding no factual dispute where Plaintiff's arguments regarding the unconventional nature of a claimed component were contradicted by the patent specification, which indicated the claimed components were conventional).

**3.     Analysis**

Among the briefs filed were notices of very recent Federal Circuit decisions regarding § 101, including some of the decisions already mentioned. *See, e.g.*, *Aatrix*, 2018 WL 843288. In this Order, the Court has sought to apply the current law as it continues to develop.

**3.1     Representative Claim**

Like patent invalidity challenges under other grounds, an invalidity challenge under § 101 is generally analyzed on a claim-by-claim basis. But the Federal Circuit has acknowledged that the analysis can also be performed by way of representative claims. *See Content Extraction*, 776 F.3d at 1348 (finding representative claims appropriate where district court had found claims were "substantially similar and linked to the same abstract idea"); *Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative.")

In its Motion, Defendant identifies one claim as representative of the asserted claims for three of the asserted patents. (*See generally* Dkt. 44.) For the remaining four patents, Defendant's analysis focuses on either the sole asserted claim or the sole asserted *independent* claim. The following chart summarizes the asserted claims and analyzed claims identified and argued in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

Defendant's Motion. It also includes the "groups" Defendant identifies in its Motion for the patents.

| Patent No. | Asserted Claims (*See* Dkt. 1) | Analyzed Claim | "Patent Group" Name (*See* Dkt. 44 at 2) |
|---|---|---|---|
| '389 Patent | 3, 4, 7, 8 | Claim 13 of the '522 Patent (representative claim) | "Rental Expiration Patents" |
| '942 Patent | 1, 2, 4, 5, 7, 8, 10, 11, 13, 14, 16, 17, 19, 20, 22 | | |
| '522 Patent | 13, 14, 16, 17, 19, 20, 22, 23 | | |
| '583 Patent | 3 | Claim 3 | "Video Index Patents" |
| '810 Patent | 1, 2, 6 | Claim 1 | |
| '783 Patent | 2 | Claim 2 | "Video List Patent" |
| '679 Patent | 7 | Claim 7 | "Decoding Patent" |

In its Opposition, Plaintiff "adopt[s] Fandango's labels [*i.e.*, "groups"] for consistency only." (Dkt. 47 at 3.) Plaintiff also acknowledges Defendant's identification of Claim 13 of the '522 Patent as representative without objection. (*Id.*) Similarly, Plaintiff doesn't highlight the limitations of dependent Claims 2 and 6 to support its patentability arguments. Indeed, Plaintiff doesn't present any separate argument regarding "the distinctive significance of any claim limitations not found in the representative claims." *Berkheimer*, 881 F.3d at 1365. The Court will thus treat Claim 13 of the '522 Patent as representative of the asserted claims in the '389, '942, and '522 Patents and Claim 1 of the '810 Patent as representative of Claims 1, 2, and 6 of the '810 Patent.

### 3.2 The '389, '942, and '522 Patents

The '389, '942, and '522 Patents are members of the same patent family and share a common specification. Each of the patents is titled "Digital Information Recording Apparatus, Reproducing Apparatus, and Transmitting Apparatus." Representative Claim 13 of the '522 Patent recites:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

> 13. A method, comprising:
> transmitting audio/video information;
> receiving the audio/video information;
> storing the audio/video information on a storage medium; and
> reproducing the audio/video information from the storage medium
> according to control information related to the audio/video
> information,
> wherein the control information includes: a first period for retaining
> the audio/video information on the storage medium, and a
> second period, that begins at the start of an initial reproduction
> of the audio/video information, for enabling a start of a
> reproduction of the audio/video information stored on the
> storage medium, and
> wherein, in a case where an elapsed time from a retaining of the
> audio/video information is within the first period and an
> elapsed time from an initial reproduction of the audio/video
> information is within the second period, enabling a
> reproduction of the audio/video information, and, in a case
> where a reproduction is started before the end of the first
> period and the reproduction is continuing at the end of the first
> period, enabling the reproduction to an end of the audio/video
> information beyond the end of the first period, and thereafter
> disabling a start of another reproduction of the audio/video
> information even if an elapsed time from the initial
> reproduction of the audio/video information is within the
> second period.

In other words, Claim 13 recites a method of "reproducing" audio/video information from a storage medium where "reproduction" can *continue* even after a particular time period to *start* reproduction has ended. The other asserted claims of the three patents are similar, except that the claims of the '389 Patent do not include a "grace period" for a user to continue reproducing content after the time period has ended.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

In Opposition, Plaintiff emphasizes the claim term "control information." Although Plaintiff does not submit a proposed construction, Plaintiff argues that a construction of "control information" might ultimately impact the patentability analysis. (Dkt. 47 at 12.) Plaintiff further states, "[a]lthough Fandango argues that sending and receiving this control information was routine and conventional, that assertion is unsupported by any record evidence or couched in any construction defining the scope of those claim terms." (*Id.*) Plaintiff emphasizes that the claims are "directed to transmitting content with a particular type of 'control information' that enforces a particular set of temporal restrictions, including at least retention period and reproduction period." (*Id.* at 17 (citing '389 Patent at 9:60–12:55; 19:18–31).) In Reply, Defendant argues, in part, "Claim 13 requires only that the 'control information' include the retention and playback period." (Dkt. 50 at 12.) Defendant argues that these non-technical concepts should not influence patentability and further argues that specific features of "control information" described in the specification "simply are not captured in the claims." (*Id.* at 5–6.)

At the hearing, Defendant argued that it had responded to Plaintiff's challenge regarding the meaning of "control information" and whether it is routine and conventional when it stated in its Reply that "Fandango agrees with Maxell's characterization of Claim 13 of the '522 Patent as reciting the use of 'control information' for a video that 'defines separate retention and reproduction periods and where the viewer's playback is not interrupted during the reproduction period, even if the retention period has ended." (*See* Dkt. 50 at 11.) The Court finds Defendant's argument unpersuasive, and declines to make a patentability determination before construing this term and further considering at least this potential factual dispute. *See Aatrix*, 2018 WL 843288, at *5.

In reply, Defendant is adamant that Plaintiff's claim construction arguments should be rejected because Plaintiff neither "articulate[s] how or why construction of any [of] these terms would have any bearing on the patent-eligibility analysis, nor set[s] forth any proposed constructions that would impact that analysis." (Dkt. 50 at 4–5.) While Plaintiff could have strengthened its arguments by providing explicit proposed constructions for particular terms, Plaintiff has sufficiently explained its understanding of the scope of the claimed inventions. Defendant's argument would effectively put the burden on Plaintiff to prove patent eligibility, but the burden here is on Defendant. Without a full understanding of the proper scope and nature of the claimed inventions, a patent ineligibility finding would be inappropriate. *Bancorp*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

*Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012) ("[I]t will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter.")

### 3.3 The '583 and '810 Patents

The '810 Patent is a divisional (a continuation) of the '583 Patent. The two patents share a common specification and are both titled "Video Access Method and Video Access Apparatus." Claim 3 of the '583 Patent recites:

> 3. A video picture access method, comprising the steps of;
> displaying in superposition on a video picture being displayed on a display screen a representative image list containing at least one representative image of a reduced size which corresponds to a scene included in said video picture;
> making into appearance said representative image list while extending stepwise a display field of said representative image list over a predetermined time duration;
> starting reproduction of a video picture of a scene corresponding to a representative reduced-size image selected by an operator to be next displayed from said representative image list at a display position of said selected representative reduced-size image with a size thereof; and
> causing said reproduction to transit temporally gradually to a full screen reproduction in which said video picture is displayed substantially over a whole surface of said display screen.

Claim 1 of the '810 Patent recites:

> 1. A video picture access system, comprising:
> means for inputting a command;
> means for displaying a list of time-serial representative images of scenes included in a video picture; and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

> means for scrolling the list by displaying a new representative image instead of the representative image of the representative image already displayed earlier when a total number of the time-serial representative images exceed a maximum number of representative images which can be displayed on a display screen;
> wherein the representative image added newly for display is a representative image of a scene distanced for a given time in conformance to the command inputted via the inputting means.

The parties generally analyze the '583 and '810 Patents together in their briefs. But both parties also separately highlight the means-plus-function limitations in Claim 1 of the '810 Patent (*i.e.*, "means for inputting," "means for displaying," and "means for scrolling"). Defendant essentially proposes constructions for these terms in its brief and concludes by arguing that each of the three means-plus-function phrases are drawn to "well-known computer components to perform their conventional functions." (Dkt. 44 at 7.) Plaintiff does not specifically respond to Defendant's arguments or constructions, but rather simply states, "[i]n the absence of any claim construction defining these and other claim terms, and with no factual record establishing whether the properly construed terms were as 'routine and conventional' as Fandango claims, it is simply premature for the Court to reach the eligibility issue." (Dkt. 47 at 13.)

But claim construction disputes aside, Defendant cannot meet its burden of proving invalidity at this stage in the proceedings. The '583 and '810 Patents describe the benefits of DVDs and other recent "video picture recording/reproducing apparatuses" in that they allow individuals to search through video content "almost instantaneously, differing from the recording on a video tape, in which case the indexing operation is possible only after the fast feeding or rewinding of the tape." '583 Patent at 1:33–36. The patents further describe shortcomings in "conventional techniques" associated with these systems. For instance, in the Summary of the Invention, the patents state that immediately switching views abruptly to desired content can "give an impression of discontinuity to the viewer, impairing his or her feeling of enjoying the video picture with absorbed interest." *Id.* at 1:67–2:2. Similarly, the patents explain that in viewing indexed images on a full screen as a user is moving through content, "the user will encounter difficulty in understanding clearly the correlation between the video picture and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

index images." *Id.* at 2:5–9. In purporting to solve this problem, the patents state, "it is an object of the present invention to provide a video picture access method and a system therefor which are capable carrying out the scene selecting or indexing operation in the course of reproduction or playback of a video picture without impairing or disturbing user's comfortableness of viewing." *Id.* at 2:32–38.

At a minimum, this patent disclosure supports the conclusion that the claims may recite an inventive concept sufficient to confer patent eligibility. Claim 3 of the '583 Patent and Claim 1 of the '810 Patent disclose a method/system (respectively) for video picture access that include specific requirements for how representative images of content are displayed to a user. For instance, Claim 3 of the '583 Patent requires depicting representative images of reduced size for a "predetermined time duration" and slowly transitioning from an original image to a selected image in a particular manner. Regarding Claim 1 of the '810 Patent, while this claim is a closer call, at this stage there is insufficient basis to conclude that the "means for" limitations don't similarly refer to particularized steps, including specific means for images to be scrolled or displayed and specific means for "inputting a command" (not to mention what constitutes a "command" in the context of the patent). At the hearing, Defendant solely emphasized Claim 1 of the '810 Patent and indeed did not address its arguments in briefing regarding the '583 Patent. But at least at the motion to dismiss stage, the Court cannot conclude that these either of these claimed combinations of steps are routine and conventional. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("The district court's analysis in this case, however, looks similar to an obviousness analysis under 35 U.S.C. § 103, except lacking an explanation of a reason to combine the limitations as claimed. The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. As is the case here, an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."); *Trading Techs. Int'l, Inc. v. CQG, INC.*, 675 F. App'x 1001, 1004 (Fed. Cir. 2017) ("the specific structure and concordant functionality of the graphical user interface are removed from abstract ideas, as compared to conventional computer implementations of known procedures.").

Defendant argues that the claims aren't drawn to an inventive concept because the patent specification is focused on improvements to a user's viewing experience rather than a "technological improvement." (Dkt. 50 at 16.) But Defendant doesn't adequately explain how

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

improving a user's viewing experience can't also be considered a technological improvement in this context. If true that the claimed invention is drawn to an unconventional way of displaying content that enhances a user's viewing experience, it's possible the invention would be drawn to a technological improvement in the field of graphical user interface. *DDR Holdings* is particularly relevant in this regard. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Indeed, the patent specification in *DDR Holdings* related to the arguably non-technological problem for online vendors of website visitors leaving the website when they clicked on a hyperlink. As the Federal Circuit noted,

> these claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

*DDR Holdings*, 773 F.3d at 1257; *see also Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018) (claims related to depicting data on small screens "allow[ed] the user to see the most relevant data or functions 'without actually opening the application up.'"). Here, too, according to the patent specification, problems caused by abrupt changes between displayed video content only arose because new technology allowed viewers to instantaneously move between parts of video content, as compared to having to rewind or fast-forward the VHS tape. The problem disclosed by the patents may not sound technological on its face, but according to the patent specification, that problem only surfaced, as in *DDR Holdings*, because of other technological improvements in the industry.

Defendant heavily emphasizes *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1236 (Fed. Cir. 2016) in arguing that these claims and the claims of the '783 Patent are unpatentable. In *Ameranth*, the Federal Circuit addressed an appeal of Covered Business Method Reviews and § 101 determinations from the Patent Trial and Appeal Board. Of note, the Board construed the claims at issue before making a patentability determination. *See id.* at 1236–38. Also notably, beyond reciting a menu "displayable in a window of said graphical user interface in a hierarchical tree format," and other related "displayable" menus, the *Ameranth* claims did not include specific requirements about how information must be displayed. *See id.* at 1234; *see also id.* at 1239 (explaining that Board found certain claims ineligible as covered business methods

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

because the claims did not recite a solution to the problem of how to display and synchronize computerized menus on non-standard devices, but rather simply "include[d] descriptions about menu generation.") Also inapplicable for similar reasons is the Federal Circuit's decision in *Move, Inc. v. Real Estate All. Ltd.*, No. 2017-1463, 2018 WL 656377 (Fed. Cir. Feb. 1, 2018) (patent claims related to displaying real estate properties and zooming in on a map patent ineligible after claims construed). At least at the motion to dismiss stage, the Court declines to conclude that the '583 and '810 Patents are drawn to patent-ineligible subject matter.

    **3.4    The '783 Patent**

The '783 Patent is titled "Editing Method and Recording and Reproducing Device." Claim 2 of the '783 Patent recites:

> 2. A method comprising:
> reproducing selected video information from among a plurality of video information recorded on a recording medium by the recording unit,
> displaying, on a display device, a user interface for a user to select desired video information to be reproduced from among the plurality of video information recorded on the recording medium by the recording unit;
> reproducing the selected video information read out from the recording medium, wherein a first area and a second area are displayed within a menu display,
> wherein the first area is configured to display at least first indication associated with a first group of video information for a first classification and second indication associated with a second group of video information for a second classification different from the first classification, and
> wherein the second area is configured to display thumbnails corresponding to video information recorded on the recording medium by the recording unit;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

>   wherein, when the first indication shown in the first area is selected, displaying, in the second area, a first group of thumbnails corresponding to the first group of video information;
>   wherein, when the second indication shown in the first area is selected, displaying, in the second area, a second group of thumbnails corresponding to the second group of video information,
>   wherein, even if one video information recorded on the recording medium included in both the first group of video information and the second group of video information is deleted from the first group of video information, the one video information continue to be included in the second group of video information.

The parties don't dedicate many pages of the briefs to their arguments for the '783 Patent. (*See, e.g.*, Dkt. 44 at 22–23; Dkt. 47 at 22–24; Dkt. 50 at 18–21.) Plaintiff argues the '783 Patent "recites terms that may require construction, including the 'groups' of 'video information' that correspond to particular 'classifications.' The meaning of these terms may well be informed, for example, by the hierarchy of organizational layers disclosed in the specification." (Dkt. 47 at 12 (citing '783 Patent at Figure 1).) Defendant apparently disputes this characterization, arguing, "no such details are recited in the claim beyond the so-called 'graphical properties'— that is, displaying two areas on a screen." (Dkt. 50 at 20.) The parties otherwise dispute whether the '783 Patent is "broadly directed to the abstract concept of classifying and sorting information into two groups" or "directed to a particular [graphical user interface] with specific structure and functionality." (*Compare* Dkt. 44 at 22 *with* Dkt. 47 at 23.)

The '783 Patent describes shortcomings with "conventional technique[s]" for devices that allow users to manage data playlists. '783 Patent at 1:48–2:31. The '783 Patent then purports to provide a solution to these shortcomings by proposing systems such that "[e]ven in the case where a plurality of users share a single recording medium . . . each user can manage favorite reproduction contents, resulting in improved usage." *Id.* at 2:50–55. To do so, the '783 Patent specification refers to "a unit of management for managing all registered play list information and an upper management hierarchical level." *Id.* at 2:37–39.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

Similar to Claim 3 of the '583 Patent, the particularized display requirements and combination of steps disclosed in Claim 2 of the '783 Patent support the conclusion of an inventive concept at the motion to dismiss stage. *Bascom Glob. Internet Servs.*, 827 F.3d at 1350. Claim 2 of the '783 Patent requires specific display areas that depict either (1) "group[s] of video information" for a particular classification or (2) thumbnails corresponding to the particular video information. The claim further includes limitations related to what happens when video information is deleted from a particular group. Defendant argues Claim 2 is essentially equivalent to a mom and dad having separate video playlists. (Dkt. 50 at 19.) But at the very least, this argument ignores the combination of graphical interface requirements in the claims. *Core Wireless*, 880 F.3d at 1362 ("Although the generic idea of summarizing information certainly existed prior to the invention, these claims are directed to a particular manner of summarizing and presenting information in electronic devices.") A patent-eligibility determination at this stage is premature.

### 3.5    The '679 Patent

The '679 Patent is titled "Receiver and Receiving Method." Claim 7 of the '679 Patent recites:

> 7.    A content playback method in a content playback apparatus which downloads and playbacks content data, comprising the steps of:
>     downloading said content data which is encoded;
>     obtaining key information for decoding said content data;
>     storing said downloaded content data;
>     decoding an encryption of said stored content data by using said key information;
>     in a first state, obtaining said key information after all downloads of said content data have been completed, and decoding said encryption of said content data to enable a playback;
>     in a second state, if said playback instruction is received from an input unit during the downloading of said content data, receiving key information before all downloads of said content data have been completed, and decoding said encryption of said content data to enable a playback before all downloads of said content data have been completed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

If it seemed like the parties weren't focusing much attention on the '783 Patent, they focus even less on the '679 Patent. (*See* Dkt. 44 at 23–24; Dkt. 47 at 24; Dkt. 50 at 21–22.) The '679 Patent relates to downloading digital content, and specifically describes allowing a user to download encrypted digital content that can be decrypted with "key information." The '679 Patent describes "risks" involved with allowing a user to access key information too early ("a possibility that [the user] can illegally monitor the content," '679 Patent at 1:50–52) and shortcomings with waiting to give access to key information ("if it is desired to start playback before the downloading is completed, the playback cannot be performed because there is no key information," *id.* at 1:59–61). The '679 Patent purports to solve this problem by allowing downloading and playback to occur in one of two "modes" depending on whether a viewer requests immediate video playback. *See id.* at Claim 7. These modes are recited in Claim 7 as a "first state" and a "second state." *Id.*

Defendant argues that the claim is patent ineligible "for broadly claiming an abstract concept – decryption of data using key information." (Dkt. 44 at 23.) To support its argument, Defendant cites two district court cases where the asserted patents were invalidated after claim construction had already occurred and a third district court case invalidating a patent related to credential verification, not encryption/decryption methods. In opposition, Plaintiff challenges Defendant's assertion that the key, or "key information" recited in the claims is conventional. (Dkt. 47 at 13.) Plaintiff implies that whether the key and the claimed "encryption and decryption scenario" are conventional are questions of fact and that Defendant's arguments at this stage are contradicted by the specification. (*Id.* at 13–14.) Plaintiff argues, "the claim, read in light of the specification, is directed to a solution for balancing the needs of the content owner with those of the viewer by timing the delivery of the decryption key." (*Id.* at 24 (citing '679 Patent at 2:33–3:59).) Defendant responds by arguing, "[w]hile Maxell makes much of the disclosure in the specification of 'balancing the needs of the content owner with those of the viewer['] . . . Maxell does not explain why or how simply operating in a 'first state' or a 'second state' to download a decryption key at different times addresses this problem." (Dkt. 50 at 22.)

Under *Alice* step one, Claim 7 of the '679 Patent is directed to an abstract idea. Specifically, the claim relates to downloading and storing encrypted data and having a system make a choice about when to give a user the "key" to decrypt the data, depending on when the user

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

asks to play the data. The solution to the problems described in the patent specification is not an advance in technology or a better way of protecting a copyright holder's rights through a particular new technological system. Rather, the patent describes its purported solution as providing a choice between two known "modes" based on when a user wants to play the data. *See* '679 Patent at 1:50–59 (describing the shortcomings of each individual claimed "mode" in the "Problem to be Solved by the Invention" section). Indeed, the patent doesn't adequately explain how its claimed method actually better protects the interests of the copyright holder compared to one of the two individual modes. Considering the shortcomings of the two conventional approaches disclosed in the patent, why wouldn't an ill-meaning user following the method of the claimed invention just request immediate playback, and then proceed to "illegally monitor the content" the same as before? *See id.* at 1:50–52.

Ultimately, the overall focus of Claim 7 relates to how to select between one of two "modes," *i.e.* "states." But selecting between two known "states" is an abstract concept. And moreover, in this case, that selection is governed by a simple, abstract rule: (1) if a user asks for immediate playback, give the information key immediately, and (2) if the user does not ask for immediate playback, do not give the information key immediately. In the single page of its Opposition arguing for eligibility of Claim 7, Plaintiff focuses on its recitation of the two modes and emphasizes that the claim "balance[es] the needs of the content owner with those of the viewer by timing the delivery of the decryption key." (Dkt. 47 at 24.) As already stated, it's not clear that the claimed method actually accomplishes this task and better protects the copyright holder's rights. But more importantly, Plaintiff's argument is particularly focused on a purported solution that is itself an abstract concept rather than a technological improvement: balancing needs of interested parties by timing the delivery of information. The Court finds the overall nature of Claim 7 of the '679 Patent is directed to the abstract idea of determining when to share a decryption key based on whether or not a user requests immediate access to data.

The parties' arguments regarding the nature of the claimed "key information" term fall under *Alice* step two. Plaintiff briefly argues that there are factual questions regarding whether this term and the "encryption and decryption scenario" are routine and conventional. The "key information" concept is first disclosed in the '679 Patent in the context of the prior art. In the Background Art section of the specification, the '679 Patent states,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

> [i]n recent years . . . a transmission of digital content data such as video image, audio sound, or the like via a broadband home communication has been used. According to those services, generally, the content such as video image, audio sound, or the like is compressed by a system such as MPEG or the like and transmitted in a format decoder and played back. In the case of a service for providing a content such as video image, audio sound, or the like for a charge, there is a case where the content has been encrypted. When the content is read out from the storing function and played back, the encryption is decrypted by using key information obtained separately, thereby playing back the content (for example, refer to patent document [JP-A-2003-174439].

'679 Patent at 1:19–37. In other words, key information is described as a known aspect of a prior art system. Indeed, in providing its general overview of the '679 Patent, Plaintiff acknowledges that the patent "discloses that, at the time of the invention, [video rental software] would prevent piracy by transmitting digital works in an encrypted format and providing the user with a decryption key." (Dkt. 47 at 6 (citing '679 Patent at 1:31–37).) In the face of the intrinsic record (and Plaintiff's own acknowledgment of that record), Plaintiff's contrary argument that "key information" is not routine and conventional, without more, is unpersuasive.

Beyond the "key information" term, Claim 7 doesn't actually describe any other computer components, generic or otherwise, that might be considered at step two. As noted, Plaintiff's Opposition mostly focuses on the selection between two modes and balancing the rights of the copyright holder and viewer. In other words, Plaintiff does not attempt to argue that either of the individual modes were unconventional at the time of the invention, or even that any other particular aspects of the claim convey an inventive concept. Plaintiff instead emphasizes that the claims are directed to "timing the delivery of the decryption key" through the selection of one of the two modes. But as stated regarding step one, simply choosing between one of two modes is an abstract concept, particularly where the choice is made based solely on when a user requests access to data. Claim 7 does not otherwise describe a technological way that the selection is accomplished, and otherwise recites only the routine steps of downloading data, obtaining key information, storing downloaded data, and decoding the downloaded data using key information. The Court finds that Claim 7 of the '679 Patent drawn to patent-ineligible subject matter.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-07534 AG (SSx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

**4.  Conclusion**

Defendant's Motion to Dismiss (Dkt. 44) is **GRANTED** as to Claim 7 of the '679 Patent. Defendant's Motion is otherwise **DENIED**.

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |