1  Jamie B. Beaber (*Pro Hac Vice*)
       jbeaber@mayerbrown.com
2  Kfir B. Levy (State Bar No. 235372)
       klevy@mayerbrown.com
3  James A. Fussell, III (*Pro Hac Vice*)
       jfussell@mayerbrown.com
4  Tiffany A. Miller (*Pro Hac Vice*)
       tmiller@mayerbrown.com
5  Michael L. Lindinger (*Pro Hac Vice*)
       mlindinger@mayerbrown.com
6  **MAYER BROWN LLP**
   1999 K Street NW
7  Washington, DC 20006
   Phone: 202.263.3000
8
   Robert G. Pluta (*Pro Hac Vice*)
9      rpluta@mayerbrown.com
   **MAYER BROWN LLP**
10 71 South Wacker Drive
   Chicago, IL 60606
11 Phone: 312.782.0600

12 David M. Stein (State Bar No. 198256)
       dstein@ggtriallaw.com
13 **GREENBERG GROSS LLP**
   650 Town Center Drive, Suite 1700
14 Costa Mesa, California 92626
   Phone: 949.383.2800
15 Fax:   949.383.2801

16 Attorneys for Plaintiff MAXELL, LTD.

17 *Additional Counsel Listed on Signature Page*

18              **UNITED STATES DISTRICT COURT**

19              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 20 MAXELL, LTD., | Case No. 2:17-cv-07534-AG-(SSx) |
| 21         Plaintiff, | **MAXELL, LTD.'S S.P.R. 3.5 RESPONSIVE CLAIM CONSTRUCTION BRIEF** |
| 22      v. | |
| 23 FANDANGO MEDIA, LLC, | Hon. Andrew J. Guilford |
| 24         Defendant. | Hearing: July 12, 2018 |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................ii

I.  THE Video Index Patents ('583 and '810 Patents)............................................ 1
    A.  "making into appearance said representative image list while extending stepwise a display field of said representative image list over a predetermined time duration" ................................................. 1
    B.  "causing said reproduction to transit temporally gradually to a full screen reproduction"................................................................................. 3
    C.  "starting reproduction of a video picture…at a display position of said selected representative reduced-size image with a size thereof"...................................................................................................... 4
    D.  "means for scrolling the list by displaying a new representative image instead of the representative image of the representative image already displayed earlier when a total number of the time-serial representative images exceed a maximum number of representative images which can be displayed on a display screen" .......................................................................................................... 4
    E.  "means for reproducing the video picture by gradually extending the area of a selected representative image stepwise from a displayed position until the selected representative image has occupied the whole area of the display screen when one of the representative image is selected by the user" ....................................... 5
II. the Rental Patents ('389, '942, and '522 Patents) ............................................. 6
    A.  "control information" .................................................................................. 6
    B.  "a first period for retaining the audio/video information on the recording medium" ...................................................................................... 6
III. Disputed Terms in the Video List Patent ('783 Patent) ................................... 8
    A.  "recording unit"............................................................................................ 8
    B.  "first[/second] group of video information for a first[/second] classification" ................................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Epos Tecs. Ltd. v. Pegasus Techs. Ltd.*,
  766 F.3d 1338 (Fed. Cir. 2014) .......................................................................... 7, 9

*Trivascular, Inc. v. Samuels,*
  812 F.3d 1056 (Fed. Circ. 2016) ............................................................................ 9

*Vitronics Corp. Conceptronic, Inc.,*
  90 F.3d 1576 (Fed. Cir. 1996) ................................................................................ 2

*Williamson v. Citrix Online, LLC,*
  792 F.3d 1339 (Fed. Cir. 2015) .............................................................................. 7

**Statutes and Rules**

35 U.S.C. § 112 .............................................................................................................. 5

Fandango's approach to claim construction is predictable. For the most part, they urge the Court to limit claim elements to specific embodiments described in the specifications without identifying any clear disavowal of claim scope or limiting disclosure in the file history or the specification. Rather than follow the principles of claim construction, Fandango's tries to support its noninfringement arguments, a point Fandango makes explicitly clear in multiple instances. Fandango's proposed constructions ignore teachings in the intrinsic evidence supportive of Maxell's constructions and in many instances ignore the plain and ordinary meaning of words applied within the patents' specification. Accordingly, Fandango's incorrect application of the law should be rejected and the Court should adopt Maxell's proposed constructions.

## I.  THE VIDEO INDEX PATENTS ('583 AND '810 PATENTS)

### A.  **"making into appearance said representative image list while extending stepwise a display field of said representative image list over a predetermined time duration"**

Fandango's proposal is incomplete and should be rejected because it narrowly focuses on a single embodiment and ignores key portions of the specification.

In support of its efforts to rewrite the claims, substituting "incrementally" for "stepwise," Fandango argues that the representative images should be "extended incrementally over time, not displayed at once." Dkt. 79 at 2 (emphasis in original). However, as support for this statement, Fandango focuses only on the embodiment shown in Figures 3A-C, which improperly limits the claim scope. *See id.* at 3. Tellingly, Fandango jumps right to extrinsic evidence as "support" for its construction, including a citation to a dictionary definition that Maxell cited in the joint claim construction statement but <u>did not</u> rely on in its opening brief.[1] *See id.*; *see also* Dkt. 78-4, 26:11-27:21 (Mr. Lipoff confirming that he did not use any

---

[1] Moreover, the cited deposition testimony from Mr. Lipoff is consistent with and supports Maxell's construction. *See* Dkt. 79 at 3.

extrinsic evidence, including dictionary definitions, to support his opinions for this term or anywhere in his report.). Fandango's direct resort to extrinsic evidence rather than the intrinsic evidence is wrong, particularly where the intrinsic evidence offers support for a proper construction. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). Fandango then makes the claim that Maxell's construction "improperly changes [the claim scope] in several respects." Dkt. 79 at 3. Maxell's construction does nothing of the sort, and Maxell responds to each criticism in kind.

First, Maxell's construction does not remove the concept of extending the list onto the screen stepwise. *See* Dkt. 79 at 4. Rather, Maxell's construction, which includes the concept of sequentially displaying the representative image list, is fully consistent with the entirety of the intrinsic evidence (*see* Dkt. 78 at 6-8), not just the "the step-by-step approach shown in Figure 3" as Fandango believes. *See* Dkt. 79 at 4. Fandango's claim that Maxell's "reading of stepwise to mean sequential lacks support in the specification" is wrong. *See id.* Fandango ignores multiple instances of the embodiment in Figures 3A-C described in terms of "a sequence" or "sequentially." *See* Dkt. 78 at 6. Fandango also mischaracterizes Figure 6 and its description in the specification by attempting to disassociate the terms stepwise and sequential. Rather than support Fandango, the specification actually supports Maxell's construction and expressly associates the terms stepwise and sequential. *See* Dkt. 1-4, '583 Patent, 8:14-16 ("The video picture changes stepwise in the sequential manner illustrated in FIGS. 6A, 6B and 6C in this order as the time lapses.").

Second, Maxell's construction does not alter the meaning of "making into appearance." *See* Dkt. 79 at 4-5. Rather, Maxell merely chose to use "displaying," a term consistent with the intrinsic evidence, to better assist the jury. *See* Dkt. 78-4, 16:10-22 (Mr. Lipoff opining that "making into appearance" means "displaying.").

Third, Maxell's construction does not eliminate the temporal component of the claim—"over a predetermined time duration." *See* Dkt. 79 at 5. In fact, Maxell's construction explicitly includes a temporal element—"a given period of time"—which its expert explained is a set period of time. *See* Dkt. 78 at 7.

In sum, Maxell is not changing the scope or eliminating any elements of the term. Between Fandango's noninfringement-driven proposal and Maxell's construction that adheres to the intrinsic evidence, the Court should adopt Maxell's proposed construction.

### B. "causing said reproduction to transit temporally gradually to a full screen reproduction"

Contrary to Fandango's assertions, Maxell's proposed construction does not read out any limitations and should be adopted. First, Maxell does not read out the "temporally gradually" limitation as its construction explicitly or, at a minimum, implicitly conveys that the representative-image-to-full-screen-display occurs over time. *See* Dkt. 78 at 8-11. For example, Maxell's construction includes the "starting" and "until" terms to convey the temporal process of transitioning the representative image until it occupies the whole of the display screen. *See id.* Thus, there is no confusion regarding the "temporally gradually" claim element in the context of Maxell's proposed construction.

Moreover, Fandango's second argument as to this term, which relates to the understanding of the "said reproduction" term, twists and misreads the surrounding claim language. *See* Dkt. 79 at 9. In fact, the preceding limitation (construed below)—"starting reproduction of a video picture <u>of a scene corresponding to a representative reduced-sized image selected by an operator</u>"—makes clear that a thumbnail image is being selected. *See* Dkt. 1-4, '583 Patent, 10:16-18 (emphasis added). In other words, it is this selected thumbnail image that is then transitioned from thumbnail-sized to full-screen. *See* Dkt. 78 at 8-11. Maxell's proposed

construction reflects this straightforward understanding and stands in direct contrast to Fandango's arguments which omit crucial details from the intrinsic evidence.

### C. "starting reproduction of a video picture…at a display position of said selected representative reduced-size image with a size thereof"

Here again, Fandango puts forth a purported noninfringement theory as a claim construction dispute and ignores the plain and ordinary meaning of words applied within the patent's specification. *See* Dkt. 79 at 7 ("Any plain and ordinary meaning of this claim term has to include the requirement that the playback of the video start at the size and display position of the representative reduced-size image—something that FandandgoNOW does not do."). When the claim limitation is read in its entirety, the term conveys that when the reduced-sized image (thumbnail) is selected, the video picture at that scene transitions to play eventually over the whole display screen. *See* Dkt. 78 at 8-12. Indeed, Fandango concedes this understanding in its brief. *See* Dkt. 79 at 7 ("the playback of the video must start at the same display position and same small size as the selected representative reduced-size image"). Thus, Fandango's proposed changes to the claim language are unnecessary, do not help the jury further understand the term, and should be rejected.

### D. "means for scrolling the list by displaying a new representative image instead of the representative image of the representative image already displayed earlier when a total number of the time-serial representative images exceed a maximum number of representative images which can be displayed on a display screen"

Fandango's arguments were fully anticipated in Maxell's opening brief. As such, Maxell provides only a brief summary here, including an additional citation to the intrinsic evidence that further refutes Fandango's claims.

Fandango's proposed construction fails for two reasons. *See* Dkt. 78 at 13-14. First, as explained in more detail in Section I(E) (the "means for reproducing" term),

computer 4 is not a general purpose computer. *See infra*; *see also* Dkt. 78 at 15-19. Rather, computer 4 is a specialized video processing engine, for which detailed algorithms are not needed. *See id.* Second, Fandango's attempt to re-litigate its 101 motion—transparently seeking a definition including "conventional"—is improper and should be rejected. *See id.* at 14. Indeed, the examiner allowed the claims at least in part due to the means for scrolling element—such a comment cuts against Fandango's assertions that the '810 Patent discloses only "conventional scrolling functions." *See* '810 Patent File History, October 2, 2008, Non-Final Rejection, at 2-3. In contrast, Maxell's proposed construction is taken directly from the specification, supports the fully scope of the claimed function, and should be adopted. *See* Dkt. 78 at 13.

    E.    **"means for reproducing the video picture by gradually extending the area of a selected representative image stepwise from a displayed position until the selected representative image has occupied the whole area of the display screen when one of the representative image is selected by the user"**

For the reasons set forth in Maxell's opening brief (*see* Dkt. 8-11, 15-17) and in Section I(B), Fandango's intent to swap out certain terms for others to limit the function to specific embodiments is improper and should be rejected. *See* Dkt. 79 at 13. Fandango admits that its proposed construction for the function is tethered to the embodiments shown in Figs. 3A-C and Figs. 6A-C, while minimizing, if not completely ignoring, the breadth of the specification. *See id.* In contrast, Maxell's proposed construction for the function comports with the entirety of the specification, including the stated object of the '810 Patent. *See* Dkt. 78 at 17.

Further, the '810 Patent provides sufficient disclosure for the Court to find this term definite under 35 U.S.C. §112. As an initial point, Fandango alleges that the specification "only describes a general purpose computer and a pictorial gradual extension of an image shown in FIGs. 6A-6C" in its proposed structure. *See* Dkt. 79

at 12. From there, Fandango claims that, since the function cannot be done by a general purpose computer, the corresponding structure must be a special purpose computer to perform a specific algorithm and the '810 Patent does not disclose such an algorithm. *See generally id.* at 13-16. Not so.

Fandango's argument is rife with errors. First, the computer 4 is not a general purpose computer, but a collection of components that represent a video processing engine to display, for example, the images in Figs. 6A-C. *See* Dkt. 78 at 17. For example, Figures 1 and 2 provide substantial support that computer 4 is not a black box running an algorithm, but rather a collection of components, including a variety of hardware components that execute instructions to perform the properly construed function. *See* Dkt. 78 at 18-19. Maxell's expert, Mr. Lipoff, provided further explanation and context for the disclosure of Figures 1 and 2. *See* Dkt. 78 at 18-19; *see generally* Dkt. 78-4, 60-122.

Fandango's interpretation of Figures 1 and 2, and the corresponding disclosure, is limited to its irrelevant search for an algorithm. *See* Dkt. 79 at 14-15. This is error. But, as Maxell's opening brief explains, the logical interpretation of the intrinsic and extrinsic evidence is that there is simply no requirement, as Fandango demands, for an algorithm pursuant to the *Aristocrat* line of cases. *See* Dkt. 79 at 16.

Accordingly, the Court should adopt Maxell's proposed constructions for both the function and structure, and reject Fandango's indefiniteness claim.

## II. THE RENTAL PATENTS ('389, '942, AND '522 PATENTS)

### A. "control information"

Maxell agrees to Fandango's construction of "control information" to mean "information that includes a set of temporal restrictions."

### B. "a first period for retaining the audio/video information on the recording medium"

Fandango's construction fails for at least two reasons. First, without support,

it substitutes the plain term "information" for "program." Second, it then attempts to improperly narrow the claim term by adding an additional limitation, "in its entirety," with no support in the intrinsic record. Ostensibly, this "proposed construction explains that these claims are directed to the retention of the entire video program rather the retention of mere fragments or portions of audio/video information as would occur with streaming programs." Dkt. 79 at 19. But the claims are not so narrow, and Fandango's proposed construction exposes its motivation to construe the claims not as written, but as Fandango wishes they were written. This is improper. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1346-47 (Fed. Cir. 2015); *Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1341 (Fed. Cir. 2014).

Fandango's faulty construction begins with its substitution of the term "program" for "information." The specification is replete with examples of the use of "program" and "information." *See* '522 Patent, 9:50-10:7. What the specification does not do, nor does Fandango contend it does, is equate the terms "program" and "information." When the applicant wanted to use the term "information," it used the word information. Likewise, when the applicant wanted to use the term "program," it used the word program. The specification makes plain that the two words are not interchangeable, nor should they be when construing this claim term.

Fandango then uses its incorrect substitution of "program" for "information" to prop up its insertion of the phrase "in its entirety" into the claim. "In its entirety" finds no support in the intrinsic evidence. Yet, again, Fandango characterizes the claims as it wishes they read, rather than how they actually read. For example, Fandango argues the claims "describe storing a video program and then reproducing it from that storage. It would be inconsistent with that process as described to include retaining only a tiny fragment of the video program." Dkt. 79 at 19. But Fandango's logic relies on the faulty premise that the patent claims an audio/video *program* rather than audio/video *information*. The claims are broad enough to

encompass retention of, for example, "a tiny fragment" of audio/video information. Nothing in the intrinsic record is to the contrary. Fandango's argument with respect to the prosecution histories of the patents is not to the contrary. Dr. Bederson only offers speculation grounded not in the intrinsic evidence but on Fandango's self serving proposed construction.

### III.   DISPUTED TERMS IN THE VIDEO LIST PATENT ('783 PATENT)

#### A.   "recording unit"

There has been no "unequivocal disavowal" of the scope of the term "recording unit." If anything, the prosecution history sets forth not a disavowal, but a clarification of the breadth of the term "recording unit" claimed in the '783 Patent, confirming that a "plain and ordinary meaning" construction is proper.

The prosecution history offered several distinctions between amended claim 2 and the prior art, including (1) in the prior art the video information is not recorded on the side of a display apparatus but recorded on the side of an external server or the like via a network, and (2) none of the references describe editing of video information recorded on a recording medium by a recording unit. *See* '783 Patent File History, Response to Office Action, March 16, 2016, at 3-4, 6-7. The prosecution history further notes:

> As stated above and repeated here, the references deal with video information recorded on the side of an external server via a network and neither of the aspect of deleting video information from the group or the aspect of "even if <u>one</u> video information <u>recorded on the recording medium</u> included in both of the first group of video information and the second group of video information <u>is deleted from the first group of video information, the one video information continue to be included in the second group of video information</u>."

*Id*. at 6-7 (emphasis in original). The Examiner offered no detailed reasons for allowance.

Fandango and its expert merely speculate when it states that the addition of "recording unit" to claim 2 overcame the prior art "because it provided a non-external, display side recording unit." *See* Dkt. 79 at 23. The claim amendments, however, preclude neither an external recording medium nor a external recording unit, but merely add a constituent recording unit to the claimed method. There is no reason to limit the term "recording unit" to be "on the side of the display apparatus." Fandango has not met its burden of proving the existence of a "clear and unmistakable" disclaimer for this term. *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063-64 (Fed. Circ. 2016). As such, the Court should adopt Maxell's construction of "plain and ordinary meaning" for the term "recording unit."

### B. "first[/second] group of video information for a first[/second] classification"

Fandango again makes an unwarranted attempt to narrow a claim. Fandango proposes taking the readily understood language of the claim, a "first[/second] group of video information," and importing the limitation "user-defined" as a preface to group of video information. This narrowing of the claim to a particular embodiment is improper. *Epos Tecs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1341 (Fed. Cir. 2014).

Fandango's error begins with the assertion that "[t]he closest description from the specification of a group of video information is "user-defined unified information." Dkt. 79 at 23. Yet Figure 8 shows an example of a file structure of original unified information, play list unified information, user-defined unified information, play list information, program information, and AV data:

**FIG.8**

(Diagram showing hierarchical file structure: ROOT (800) → TV_REC (801) → TVREC.MAN (802), PGRG.IFO (803), PGR.IFO (804), PROG0001.TS (805), PROG0002.TS (806), PROG0003.TS (807))

Contrary to Fandango's assertion, the '783 Patent refers to a variety of video information, not just information that is user-defined. '783 Patent, 6:43-47. Nor does the prosecution history compel narrowing the video information to only user-defined groupings of video information. The statements cited by Fandango do not evince a clear and unmistakable disclaimer that mandates inclusion of "user-defined." Indeed, the applicant specifically noted when it wanted to claim "user-defined" steps, particularly with respect to the displaying step: "displaying, on a display device, <u>a user interface for a user to select desired video information</u> to be reproduced from among the plurality of video information." '783 Patent, 8:59-62 (emphasis added). Once the selected video information is reproduced, and the first and second areas displayed, there is no requirement for the first and second group of video information to further be "user-defined" as Fandango requests. As such, the Court should adopt Maxell's construction of "plain and ordinary meaning" for this term.

|   |   |   |
|---|---|---|
| 1 |  | Respectfully submitted, |
| 2 |  | */s/  Jamie B. Beaber* |
| 3 | Date: June 19, 2018 | Jamie B. Beaber (*Pro Hac Vice*) |
|   |   | *jbeaber@mayerbrown.com* |
| 4 |   | Kfir B. Levy (State Bar No. 235372) |
| 5 |   | *klevy@mayerbrown.com* |
|   |   | James A. Fussell, III (*Pro Hac Vice*) |
| 6 |   | *jfussell@mayerbrown.com* |
| 7 |   | Tiffany A. Miller (*Pro Hac Vice*) |
|   |   | *tmiller@mayerbrown.com* |
| 8 |   | Alison T. Gelsleichter (*Pro Hac Vice*) |
| 9 |   | *agelsleichter@mayerbrown.com* |
|   |   | Saqib J. Siddiqui (*Pro Hac Vice*) |
| 10 |   | *ssiddiqui@mayerbrown.com* |
| 11 |   | Justin Ilhwan Park (State Bar No. 250220) |
|   |   | *jpark@mayerbrown.com* |
| 12 |   | Michael L. Lindinger (*Pro Hac Vice*) |
| 13 |   | *mlindinger@mayerbrown.com* |
|   |   | **MAYER BROWN LLP** |
| 14 |   | 1999 K Street NW |
| 15 |   | Washington, DC 20006 |
|   |   | Phone: 202.263.3000 |
| 16 |   |   |
| 17 |   | Robert G. Pluta (*Pro Hac Vice*) |
| 18 |   | *rpluta@mayerbrown.com* |
|   |   | Amanda Streff Bonner (*Pro Hac Vice*) |
| 19 |   | *asbonner@mayerbrown.com* |
| 20 |   | **MAYER BROWN LLP** |
|   |   | 71 South Wacker Drive |
| 21 |   | Chicago, IL 60606 |
|   |   | Phone: 312.782.0600 |
| 22 |   |   |
| 23 |   | David M. Stein, State Bar No. 198256 |
|   |   | *dstein@ggtriallaw.com* |
| 24 |   | **GREENBERG GROSS LLP** |
| 25 |   | 650 Town Center Drive, Suite 1700 |
|   |   | Costa Mesa, California 92626 |
| 26 |   | Phone: 949.383.2800 |
| 27 |   |   |
|   |   | Attorneys for Plaintiff MAXELL, LTD. |
| 28 |   |   |