Jamie B. Beaber (*Pro Hac Vice*)
  jbeaber@mayerbrown.com
Kfir B. Levy (State Bar No. 235372)
  klevy@mayerbrown.com
James A. Fussell, III (*Pro Hac Vice*)
  jfussell@mayerbrown.com
Tiffany A. Miller (*Pro Hac Vice*)
  tmiller@mayerbrown.com
Alison T. Gelsleichter (*Pro Hac Vice*)
  agelsleichter@mayerbrown.com
Saqib J. Siddiqui (*Pro Hac Vice*)
  ssiddiqui@mayerbrown.com
Justin Ilhwan Park (State Bar No. 250220)
  jpark@mayerbrown.com
Michael L. Lindinger (*Pro Hac Vice*)
  mlindinger@mayerbrown.com
**MAYER BROWN LLP**
1999 K Street NW
Washington, DC 20006
Phone: 202.263.3000

Amanda Streff Bonner (*Pro Hac Vice*)
  asbonner@mayerbrown.com
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606
Phone: 312.782.0600

David M. Stein, State Bar No. 198256
  dstein@ggtriallaw.com
**GREENBERG GROSS LLP**
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Phone: 949.383.2800
Fax:    949.383.2801

Attorneys for Plaintiff MAXELL, LTD.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HITACHI MAXELL, LTD.,<br><br>              Plaintiff,<br><br>       v.<br><br>FANDANGO MEDIA, LLC,<br><br>              Defendants. | Case No. 2:17-cv-07534-AG-(SSx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(c)**<br><br>Hon. Andrew J. Guilford<br><br>Date:    September 6, 2018<br>Time:    9:00 a.m.<br>Ctrm:    10D |

# TABLE OF CONTENTS

**Page**

I.   Introduction ................................................................................................ 1

II.  Statement of the facts ................................................................................ 2

  A.   The "Rental Expiration Patents" ('389, '942, and '522) ..................... 2

  B.   Representative Claim 13 of the '522 Patent ....................................... 3

  C.   Procedural Background of the Case..................................................... 4

III. Argument ................................................................................................... 6

  A.   The Legal Framework Of Patent Eligibility ....................................... 7

  B.   The Patent Eligibility Issue Is Not Ripe At This Stage. .................... 11

  C.   The Rental Patents Are Eligible For Patenting Under Section
       101................................................................................................... 12

    1.   The Rental Expiration Patents Are Valid Under Alice
         Step-One For Providing Concrete Solutions To Existing
         Problems. ................................................................................. 12

    2.   The Rental Expiration Patents Are Valid Under Alice
         Step-Two Because of the Inventiveness of the Particular
         Combination of Components.................................................... 16

IV.  Conclusion............................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018) ......................................................... 6, 7

*Alice Corp. Pty. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ...............................................................*passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016) ............................................................ 10

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ...................................................*passim*

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ............................................................ 10

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008) (*en banc*)........................................... 7, 8

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ............................................................................. 7

*Chavez v. United States*,
   683 F.3d 1102 (9th Cir. 2012).............................................................. 6

*CLS Bank Int'l v. Alice Corp. Pty., Ltd.*,
   717 F.3d 1269 (Fed. Cir. 2013) ............................................................ 4

*In re Comiskey*,
   554 F.3d 967 (Fed. Cir. 2009) .............................................................. 8

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ...............................................9, 14, 17

*Diamond v. Diehr*,
   450 U.S. 175 (1981) ............................................................................. 7

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ...................................................*passim*

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ...................................................*passim*

*Gottschalk v. Benson*,
   409 U.S. 63 (1972) .............................................................................. 7

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
  850 F.3d 1315 (Fed. Cir. 2017) .................................................................. 8

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) ................................................................ 10

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) .................................................................. 8

*Interval Licensing LLC v. AOL, Inc.*,
  2018 U.S. App. LEXIS 20277 (Fed. Cir. July 20, 2018) ..................................... 7

*Le Roy v. Tatham*,
  55 U.S. 156 (1852) .................................................................................. 8

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
  2016 WL 5661981 (D. Del. Sept. 29, 2016) ..................................................... 11

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) ..........................................................*passim*

*Mortgage Grader, Inc. v. First Choice Loan Servs., Inc.*,
  811 F.3d 1314 (Fed. Cir. 2016) .................................................................. 9

*OpenTV, Inc. v. Apple Inc.*,
  2016 WL 344845 (N.D. Cal. Jan. 28, 2016) ................................................... 16

*Parker v. Flook*,
  437 U.S. 584 (1978) ................................................................................ 7

*Symantec Corp. v. Zscaler, Inc.*,
  2018 U.S. Dist. LEXIS 122855 (N.D. Cal., July 23, 2018) ..........................*passim*

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
  675 F. App'x 1001 (Fed. Cir. 2017) ........................................................ 9, 20

*TriPlay, Inc. v. WhatsApp Inc.*,
  2018 U.S. Dist. LEXIS 49953 (D. Del., March 27, 2018) ..................... 10, 12, 19

**Statutes, Rules and Regulations**

35 U.S.C. § 101 ...............................................................................*passim*

Fed. R. Civ. P. 12(c) .......................................................................... 1, 6

Rule 12(b)(6) ................................................................................... 1, 6

## I.     Introduction

Fandango's motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) should be denied for the same reasons this Court dismissed its motion under 12(b)(6)—the claims are not "directed to" abstract ideas, and there are clear factual disputes regarding the unconventionality of the claimed subject matter in Maxell's U.S. Patent Nos. 8,311,389; 9,083,942; and 9,773,522 (collectively, the "Rental Expiration Patents"). Those that preclude a finding of invalidity under 35 U.S.C. § 101.

As in its prior motion, Fandango categorizes the inventions in the Rental Expiration Patents at a high level and then declares that its elements are conventional, well-known, and, thus, the patents should be invalidated under Section 101.  Putting aside Maxell's disagreements with Fandango's element-by-element conventionality conclusions and revisionist history regarding the claim construction process, the courts have rejected Fandango's approach to Section 101.

Fandango's approach fails at both steps of the *Alice* framework. At step one, Fandango has ignored the Federal Circuit's guidance against describing a claim at "a high level of abstraction and untethered from the language of the claims," as such an approach will "all but ensure[] that the exceptions to § 101 swallow the rule." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). And at step two, Fandango merely declares that the individual claim elements are conventional without support. But this approach is critically flawed because, even if the Court finds that each individual element of the claims is conventional on its own (which is not true), "an inventive concept can be found in the nonconventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Moreover, the Rental Expiration Patents do not preempt all methods of copyright protection using access periods by claiming only a result rather than a way to achieve the result. *See McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d

1    1299, 1314 (Fed. Cir. 2016).

2        The Rental Expiration Patents are eligible because none is directed to an

3    abstract idea and each recites an inventive concept that applies the underlying idea

4    towards a practical purpose.

5    **II.    Statement of the facts**

6        **A.    The "Rental Expiration Patents" ('389, '942, and '522)**

7        U.S. Patent Nos. 8,311,389, 9,083,942, and 9,773,522 (the "Rental

8    Expiration Patents") are all members of the same patent family and share a common

9    specification. The patents address the unique problems that arise in protecting

10   copyrights on digital works distributed over a computer network.

11       As will be explored in detail below, Maxell disagrees with Fandango's

12   characterization of what conventional teachings existed at the time of the filing of

13   the Rental Expiration Patents. *See* Dkt. 89 at 6-11. Just as in its first motion,

14   Fandango's description of the Rental Expiration Patents is far too broad in an

15   intentional effort to minimize the unconventionality of the arrangement of the

16   elements in the asserted claims.

17       Rather, nearly two decades ago, the inventors observed that copy control

18   mechanisms in digital video distribution systems must balance the competing

19   interests of copyright holders and viewers and that conventional copy control

20   mechanisms failed in that regard. For example, a mechanism that prevents a user

21   from copying content altogether deprives the user of the ability to watch the content

22   at a different place or time, while a policy that allows even one copy exposes

23   copyright holders to the possibility that users would retain those copies for long

24   periods. '522 Patent at 1:39-3:2.

25       For the purpose of digital video distribution, the inventors proposed a new

26   control layer by which rights holders could additionally set fine-grained, temporal

27   restrictions on the data that would protect their interests while causing minimal

28   disruption to the viewer. *See id.* at 3:10-32, 22:4-24. The system decouples various

1   temporal copyrights, such as "retention" rights, "playback" rights, "pause" rights,

2   "delayed start time" rights, and the like, which the rights holder can set separately

3   using a specific type of "control information." *Id.* at 9:60-12:47. For instance,

4   Claim 13 of the '522 patent (which Fandango asserts is representative) recites

5   embodiments where the control information defines separate retention and

6   reproduction periods and where the viewer's playback is not interrupted during the

7   reproduction period, even if the retention period has ended.

8       By disclosing a fine-grained, temporal approach to enforcing digital

9   copyrights in a content distribution system, the inventors enabled digital video

10  providers, like Fandango, to create usable and intuitive viewing experiences for

11  their users in a way that still respects the rights of content providers.

12      Fandango's high-level characterization of the Rental Expiration Patents

13  throughout its brief ignores these solutions to problems, which illustrate the

14  unconventionality of the arrangement of the elements in the asserted claims.

15      **B.    Representative Claim 13 of the '522 Patent**

16      Maxell does not disagree that the Court may treat Claim 13 of the '522 Patent

17  as representative for the purposes of Fandango's 12(c) motion. However,

18  Fandango's brief goes much farther than focusing on just Claim 13 and, thus,

19  Maxell must clarify the record.

20      Maxell disagrees that Claim 13 is directed to an abstract idea or that the

21  arrangement of its claimed elements is conventional or well-known. *See* Dkt. 89 at

22  9-10. And, contrary to Fandango's conclusory assertions, the remaining asserted

23  claims provide additional patent-eligible limitations. *See* Dkt. 89 at 10-11.

24      Moreover, the claim language contradicts Fandango's argument that "[n]or

25  are there any limitations in the claim as to any technological implementation or

26  improvement for how to specify or enforce the 'control information' (*i.e.*, the

27  retention period and playback period)." *See id.* at 9-10. As discussed herein, the last

28  few elements in Claim 13 of the '522 Patent explain a very specific and

3

1   unconventional arrangement and use of the control information, specifically the

2   interplay between the first and second time periods. *See* Ex. A, Lipoff Dec., ¶¶34,

3   39. That is an improvement over existing methods discussed in the Background of

4   the Invention.

5       Finally, given Fandango's focus on a representative claim, its comments

6   regarding the other asserted claims (whether in the '522 Patent or the '389 and '942

7   Patents) are inappropriate and should be ignored. *See* Dkt. 89 at 10-11, 21-22. If

8   Fandango believes that certain elements of the asserted claims, including dependent

9   claims that by definition include additional limitation(s) and specificity, are

10  "insignificant" or do not recite conventional and well-known elements when read

11  together with all of the other elements, then Fandango's request to treat Claim 13 as

12  representative should be rejected and the Court must analyze the patent eligibility

13  determination on a claim by claim basis. *See CLS Bank Int'l v. Alice Corp. Pty.,*

14  *Ltd.*, 717 F.3d 1269, 1281 (Fed. Cir. 2013).

15      In other words, if Fandango wants to say that the three Rental Expiration

16  Patents generally cover the same subject matter and focus the Court on Claim 13 of

17  the '522 Patent for the Section 101 analysis, Maxell does not object to that

18  approach. However, Fandango cannot have it both ways—stating that the Court

19  should focus on a representative claim, but then necessarily injecting the other

20  asserted claims into the Section 101 analysis. Should the Court find Fandango's

21  comments on the non-representative claims requires a separate Section 101 analysis

22  of those claims, Maxell stands ready to provide additional information to the Court.

23      **C.     Procedural Background of the Case**

24      Maxell disagrees with Fandango's recitation of the procedural background of

25  the case.

26      First, the Court did not deny Fandango's motion only because the definition

27  of term "control information" was in dispute. Dkt. 89 at 2-3. Rather, the Court

28  "decline[d] to make a patentability determination before construing [control

4

information] and further considering at least this potential factual dispute." Dkt. 66 at 7. The Court recognized that, "[w]thout a full understanding of the proper scope and underline(nature of the claimed inventions), a patent ineligibility finding would be inappropriate." *Id.* (emphasis added).

Although the claim construction of "control information" has been resolved, there remains a factual dispute regarding whether the asserted claims, as arranged with control information, are conventional and well-known as discussed herein. In other words, "the Court's outstanding questions set forth in the Order" have not and cannot be resolved at this stage. Indeed, at the prior motion to dismiss hearing, the Court commented on "the general approach that 101 issues do raise factual -- often do raise factual issues and often are inappropriate at a 12(b)(6) stage." *See* Ex. B, Hearing Transcript, at 18. Thus, a patent eligibility finding at this stage is premature.[1]

Second, while the "control information" term has a construction that is now agreed-to by the parties, Fandango presents a revisionist history of claim construction that minimizes the specificity and unconventionality in which the claims are written. Regarding the "control information" term, which was discussed at length by the parties during Fandango's prior motion, Fandango initially proposed that the term be construed to take its "plain and ordinary meaning." Ex. C, Fandango's S.P.R. 3.2 Disclosure, at 2. Fandango even submitted an expert declaration supporting that construction. *See* Dkt. 79-1, at 22-25. Fandango's goal was clear—to define the term as broadly as possible and then use that broadness to support another Section 101 motion.

During claim construction, however, Fandango recognized that its position was untenable and that the specification of the Rental Expiration Patents did impart

---

[1] Fandango arguments regarding its deadline to file petitions for *inter partes* reviews (and associated potential cost savings) are completely irrelevant and do not wash away the factual disputes or make this motion any more ripe for determination.

a specific, narrower meaning to the term, and this meaning was forwarded first by Maxell. *See* Ex. D, Maxell's S.P.R. 3.2 Disclosure, at 1. Fandango therefore adopted the first clause of <u>Maxell's</u> proposed construction. *See id.,* Ex. E, Lindinger-Maisel emails; *see also* Dkt. 79 at 22. Then, in an effort to streamline the disputes, Maxell agreed to drop the second clause of its construction and define the term according to the first clause rooted in the specification and agreed-to by the parties. *See* Dkt. 81 at 6.

While the order of what party adopted what portion of the now agreed-to construction is not at issue, what is notable is that nowhere in Fandango's pending 12(c) motion does it discuss its "plain and ordinary meaning" proposal or explain why its claim construction expert was wrong. Rather, Fandango merely concludes that the specific, agreed-to definition of "control information," which is based on the teachings in the specifications, is now a "broad construction" that supports its motion. Dkt. 89 at 3; *see also id.* at 4. Fandango's malleable interpretation and supporting attorney argument as to the alleged conventionality of the term and the arrangement of the term in combination with all of the other claim elements of the Rental Expiration Patents should be taken with a large grain of salt.

## III.   Argument

The analysis for Rule 12(c) motions is "substantially identical to [an] analysis under Rule 12(b)(6)." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted); *see also Symantec Corp. v. Zscaler, Inc.*, 2018 U.S. Dist. LEXIS 122855, *8-9 (N.D. Cal., July 23, 2018) (applying the 12(b)(6) standard to a Rule 12(c) motion on patent eligibility). However, patent eligibility can be determined on a motion to dismiss "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

As Maxell pointed out in its opposition to Fandango's prior 12(b)(6) motion to dismiss, claim construction "is an important first step in a § 101 analysis." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008) (*en banc*). Indeed, the Federal Circuit has recently expressed "some doubt about the propriety" of resolving a § 101 dispute without claim construction where there are factual disputes regarding the existence of an inventive concept in the claim elements, "alone or in combination." *Aatrix*, 882 F.3d at 1125-26; *see also Interval Licensing LLC v. AOL, Inc.*, 2018 U.S. App. LEXIS 20277, *45-46 (Fed. Cir. July 20, 2018) (Plager, J. dissenting-in-part) (suggesting that a district may defer deciding Section 101 challenges until Section 102, 103, and 112 issues are addressed).

But after claim construction is resolved on claim elements that may affect an eligibility analysis, *Alice Corp. Pty. v. CLS Bank Int'l* provides the framework for resolving a challenge under 35 U.S.C. § 101. 134 S. Ct. 2347, 2354 (2014).

## A.    The Legal Framework Of Patent Eligibility

Section 101 of the Patent Act defines the scope of patentable subject matter broadly: "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may be patented. 35 U.S.C. § 101. The Federal Circuit has been explicit that software inventions fall squarely within this definition of eligibility. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016); *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) (holding a software method eligible under Section 101).

What the courts have excluded, however, are patents on "abstract ideas." *Alice*, 134 S. Ct. at 2354. While they have never defined that label, courts have commonly applied it to "mathematical formulae," [2] "fundamental economic practices,"[3] and an "effect or result" dissociated from any method by which it is

---

[2] *See Diamond v. Diehr*, 450 U.S. 175 (1981); *Parker v. Flook*, 437 U.S. 584 (1978); *Gottschalk v. Benson*, 409 U.S. 63 (1972).

[3] *See Alice*, 134 S. Ct. at 2356; *Bilski v. Kappos*, 561 U.S. 593, 611 (2010).

1   accomplished.[4]

2       Importantly, "an invention is not rendered ineligible for patent simply

3   because it *involves* an abstract concept." *Alice*, 134 S. Ct. at 2354 (emphasis added).

4   "At some level, all inventions embody, use, reflect, rest upon, or apply … abstract

5   ideas." *Id.* at 2354. Thus, while the exclusionary principle excludes "patents that

6   claim … abstract ideas," it does not bar patents that claim "*applications* of those

7   concepts." *Id.* at 2355; *see also Bilski*, 545 F.3d at 959; *Le Roy v. Tatham*, 55 U.S.

8   156, 160 (1852); *In re Comiskey*, 554 F.3d 967, 978 (Fed. Cir. 2009). To ensure

9   that the exclusionary rule does not "swallow all of patent law," courts apply it only

10  if a claim meets two independent criteria: (1) it is "*directed to*" an abstract idea,

11  rather than merely "involves" one, and (2) it lacks any "inventive concept"—*i.e.*,

12  any additional elements transforming the claim into a patent-eligible "application"

13  of the underlying concept. *Alice*, 134 S. Ct. at 2355.

14      **Step one.** The first step is to consider the claims "in their entirety to ascertain

15  whether their character as a whole is "directed to" excluded subject matter."

16  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir.

17  2015) (emphasis added). Although courts may look to "the heart of the claimed

18  invention," *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1328

19  (Fed. Cir. 2017), they "must be careful to avoid oversimplifying the claims by

20  looking at them generally and failing to account for the specific requirements of the

21  claims." *McRO*, 837 F.3d at 1313. Because all inventions ultimately involve an

22  abstract idea, describing claims at "a high level of abstraction and untethered from

---

[4] *See McRO,* 837 F.3d at 1314 ("The abstract idea exception has been applied to prevent patenting of claims that abstractly cover results where it matters not by what process or machinery the result is accomplished."); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) (noting "a critical difference between patenting a particular concrete solution to a problem and attempting to patent the abstract idea of a solution to the problem in general"); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (criticizing claim because it "contains no restriction on how the result is accomplished").

the language of the claims" will "all but ensure[] that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337.

Again, the inquiry is not "whether the claims *involve* a patent-ineligible concept because essentially every routinely patent-eligible claim involving physical products and actions *involves*" an abstract concept. *Enfish*, 822 F.3d at 1335. Rather, the inquiry is whether the claims are "directed to" an abstract idea, rather than to some practical application of it. To answer this question, the Federal Circuit has frequently asked whether the claims address a "concrete solution to a problem" rather than "the abstract idea of a solution to the problem in general." *Elec. Power Grp. LLC v. Alstom S.A.,* 830 F.3d 1350, 1356 (Fed. Cir. 2016).

**Step two.** A claim "directed to" an abstract idea may nevertheless be eligible if it recites an "inventive concept." *Alice*, 134 S. Ct. at 2355. The claim contains such a concept if its elements, considered "both individually and as an ordered combination[,] … transform the nature of the claim into a patent-eligible application." *Id.* at 2355.

In the context of software patents, the Federal Circuit has asked whether the patent merely claims using computers as tools or instead, whether it addresses "a problem specifically arising in the realm of computer [technology]" with a "solution … necessarily rooted in computer technology." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). A claim is typically eligible if it recites "technologic modifications to solve a problem or improve the functioning of a known system." *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001, 1004-05 (Fed. Cir. 2017); *see also Enfish*, 822 F.3d at 1336 (claims "directed to a specific improvement to the way computers operate" satisfied step two of *Alice*); *Mortgage Grader, Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016) (claims that "purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field" satisfy the step two of *Alice*).

Inventiveness must not be confused with the separate requirements of novelty and non-obviousness. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 n.8 (Fed. Cir. 2016). "Novelty is the question of whether the claimed invention is new. Inventiveness is the question of whether the claimed matter is invention at all, new or otherwise." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1311 (Fed. Cir. 2016) (Reyna, J., dissenting).

Importantly, courts have reiterated *Alice*'s guidance that claim elements should not be analyzed separately. Indeed, the "inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art… an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). And in certain circumstances, "whether a claim element or combination of elements is well-understood … is a question of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

In addition, the specification of the challenged patent is probative at *Alice* step two for purposes of a motion to dismiss. So long as there are inventive improvements explained by the specification and they are "captured" in the claims, dismissal is inappropriate. *Symantec*, 2018 U.S. Dist. LEXIS 122855, at *4-5 ("[i]n some cases, when improvements in the specification are captured in the claims, whether an element or combination of elements is well-understood becomes a question of fact").

When conducting the step two inquiry at the pleading stage, courts have recognized that statements in the specification should be taken as true. *See TriPlay, Inc. v. WhatsApp Inc.*, 2018 U.S. Dist. LEXIS 49953, at *19 (D. Del., March 27, 2018) (finding claims ineligible, but noting that "[u]nlike, for instance, the claims involved in *Berkheimer*, the specification here is silent as to what the specific claimed improvement is, how it differs from the prior art, or how any inventive

feature, alone or as an ordered combination, is used in an unconventional manner."); *see also Symantec*, 2018 U.S. Dist. LEXIS 122855, at *8-9 (noting at Step Two that "[t]he specification makes clear" that a claimed concept was not present in the prior art).

### B.    The Patent Eligibility Issue Is Not Ripe At This Stage.

The Court should decline Fandango's renewed invitation to rule on the patent eligibility question because there is no factual record to support Fandango's many contentions that certain claim elements or combinations were "routine" or "conventional" at the time of invention. Months after Fandango first moved on this issue, the only thing that has changed is the agreed construction of "control information." In fact, the Court need only look to Fandango's shifting-sands approach to the "control information" term, including abandoning its own expert's opinions, to conclude that deciding the patent eligibility of the Rental Expiration Patents at this stage is, again, premature.

Fandango attempts to create a record via attorney argument as to what the specifications of the Rental Expiration Patents disclose, but those arguments do not clarify the factual disputes or result in patent ineligibility. *See MAZ Encryption Techs. LLC v. Blackberry Corp.*, 2016 WL 5661981, at *5 (D. Del. Sept. 29, 2016) ("[t]he Court is not free to accept Defendant's … attorney argument that [a claim] is directed to a 'conventional' way" of achieving an end, when there is no evidence in the record to support that conclusion). Instead, with no record before it, "the Court must take the specification's statements about the purported invention to be true." *Id.*

Here, the specifications of the Rental Expiration Patents directly contradict Fandango's attorney argument. Each patent begins with a description of the prior art, its shortcomings, and how the claimed inventions overcome those shortcomings. *See*, *e.g.*, '522 Patent at 1:28-4:8. In other words, the specifications of the Rental Expiration Patents, taken as true for purposes of Fandango's motion,

1  illustrate inventive improvements that are captured in the claims. *See, e.g.*,

2  *Symantec*, 2018 U.S. Dist. LEXIS 122855, at *5-6, *8-9; *TriPlay*, 2018 U.S. Dist.

3  LEXIS 49953, at *19. Thus, the specification's disclosures undermine Fandango's

4  contrary attorney argument that the claimed solutions were "conventional." *See* Ex.

5  A, Lipoff Dec., ¶¶36-37. At this early stage, in the absence of any factual record,

6  the Court should not credit Fandango's attorney arguments about what was routine

7  or conventional in the art at the time of invention.

8          **C.**     **The Rental Patents Are Eligible For Patenting Under Section 101.**

9       If the Court does reach the issue at this stage, it should hold that the Rental

10  Expiration Patents claim eligible subject matter under Section 101. The claims are

11  each directed to specific improvements to protecting copyrights on digital works

12  distributed over a computer network.

13       Similar to its prior motion, Fandango's ineligibility arguments follow the

14  same template for every asserted claim, making textbook errors at each step of the

15  analysis. At step one, Fandango categorizes each claim at too high a level of

16  generality—*i.e.*, "enforcing the expiration of access periods"—and then observes

17  that this high-level category is, unsurprisingly, abstract. Fandango thus commits the

18  error of "oversimplifying the claims by looking at them generally and failing to

19  account for the specific requirements of the claims." *McRO*, 837 F.3d at 1313. And

20  at step two, Fandango argues that the claims recite no inventive concepts because,

21  primarily, the "control information" element was allegedly well-known and

22  conventional. Dkt. 89 at 17-22. Fandango there errs by failing to appreciate that "an

23  inventive concept can be found in the nonconventional and non-generic

24  arrangement of known, conventional pieces." *Bascom*, 827 F.3d at 1350. Tellingly,

25  Fandango never even mentions *Bascom* in its brief.

26      **1.**    ***The Rental Expiration Patents Are Valid Under* Alice *Step-One For Providing Concrete Solutions To Existing Problems.***

27

28       The claims of the Rental Expiration Patents are patent-eligible because they

are "directed to" a specific solution to a user experience (UX) problem arising in the technological context of digital video transmission and recording. Other than a few sentences referring to the Court's order on a separate Maxell patent, which Maxell addresses herein, Fandango's *Alice* step-one analysis is nearly identical to that in its opening brief. *Compare* Dkt. 89 at 15-16 with Dkt. 44 at 15-16. Accordingly, Maxell's arguments explaining how the Rental Expiration Patents are patent eligible under *Alice* step-one are similarly restated.

The problem the inventors faced was how to balance the rights of the content owner with the viewer's need for a seamless and intuitive viewing experience *in the context of such a system.* '522 Patent at 1:48-3:2. While Fandango is correct that the general problem of balancing the rights of content owners and consumers was not unique to digital video transmission systems, the problem of how to resolve the tension *in that context* was.

The proposed solution is to send content with detailed "control information" that instructs the user's local system to enforce certain fine-grained, event-based temporal restrictions on data retention and playback. *Id.* at 2:66-4:8, 9:50-12:47. Those restrictions include at least a retention period and a playback period commenced at the start of playback. *Id.* at 22:4-24. That solution provides greater protection to rights owners and a better playback experience to viewers than did previous systems. *Id.* at 2:57-3:2. The claims are thus directed to a "concrete solution to a problem" arising in a specific field of technology, not to "the abstract idea of a solution to the problem in general." *Elec. Power Grp.*, 830 F.3d at 1356.

The solution finds no analog in the library after-hours drop boxes or restaurant reservation[5] analogies as Fandango raises (only slight changes from the "brick-and-mortar movie rental stores" in its prior motion). *See* Dkt. 89 at 16. Such

---

[5] Fandango counsel raised the "restaurant reservation" analogy at the prior hearing. *See* Ex. B, Hearing Transcript, at 21-22. For the same reasons the analogy failed then, it fails now, too. *See id.* at 42.

businesses could not impose event-based restrictions on playback or disable playback remotely. *See* Ex. A, Lipoff Dec., ¶42; *see also DDR Holdings*, 773 F.3d at 1257-58 (rejecting similar brick-and-mortar analogies to Internet-specific solutions). Rather than borrowing from the brick-and-mortar context, the proposed solution improves upon then-existing computer technology, which restricted only the *number of copies* that a user could make rather than *the time* at which she could make them.[6] *See* '522 Patent at 2:39-56 ("the 'copy one generation' conveniently gives the users a chance of backing up the information recorded temporarily on a hard disc for instance"). The Rental Expiration Patents solve these problems by proposing a system that "permit[s] the user to perform conditional playback." *Id.* at 2:57-60. They thus solve UX problems arising specifically in the context of digital video transmission, and they do so in a manner necessarily rooted in that technology. *See* Ex. A, Lipoff Dec., ¶¶40-41.

To argue otherwise, Fandango categorizes both the problem and the proposed solution at too high a level.

Regarding the problem, Fandango asserts that the claims "focus" on the problem of "how to enforce the expiration of an access period to audio/video content" and "[t]he need to enforce access periods." Dkt. 89 at 15-16. Of course, the claims are directed to solutions to these problems in the digital video transmission context. But the claims are not directed to "the abstract idea of a solution to the problem in general." *Elec. Power Grp.*, 830 F.3d at 1356.

---

[6] Equally inapposite is Fandango's attempt at drawing an analogy to Maxell's U.S. Patent No. 8,255,679 ('679 Patent). *See* Dkt. 89 at 16. For the '679 Patent, the Court found that "selecting between two known 'states' is an abstract concept." Dkt. 89 at 16 (citing Dkt. 66 at 16). But Fandango attempts to blur the concepts within the Rental Expiration Patents—the '522/942 Patents allow for a grace period, the '389 Patent does not—ignores Maxell's detailed explanations regarding why comparing those general concepts to problems arising specifically the context of digital video transmission is an apples to oranges comparison and wrong.

1   Regarding the proposed solution, Fandango categorizes it as "the abstract

2   idea of enforcing the expiration of access periods" and "restricting viewing of

3   information by enforcing certain controls." Dkt. 89 at 15-16. Again, the claims

4   certainly *involve* that abstract idea, but they are not "directed to" it. *Enfish*, 822

5   F.3d at 1335. Instead, they are directed to transmitting content with "control

6   information" that enforces a particular set of temporal restrictions, including at least

7   a retention period and reproduction period. *See* '522 Patent at 9:50-12:47, 22:4-24.

8   Fandango acknowledges this point having agreed that "control information" means

9   "information that includes a set of temporal limitations" that are further specified in

10  the claims. *See* Dkt. 89 at 2.

11  Fandango's argument is based on "oversimplifying the claims by looking at

12  them generally and failing to account for the specific requirements of the claims."

13  *McRO*, 837 F.3d at 1313. For example, Figure 9 illustrates the "structure of the

14  copy control information" recited in the claims, according to some embodiments:



21  *Id.* at Figure 9. The illustrated control information may include a number of fields

22  defining specific temporal, event-based permissions explored more fully in the

23  specification. *See* '522 Patent at 9:50-12:47. And, according to the claims, those

24  fields define at least "a first period for retaining … and a second period for enabling

25  reproduction." *Id.* at 22:4-9. Fandango ignores these aspects of the invention and

26  fails to explain why the court should do the same.

27  The claims here contrast sharply with those in the unpublished district court

28  opinions Fandango cites. Dkt. 89 at 16. For example, in *OpenTV*, the claims were

15

invalid because they recited only *the idea* of using access credentials, not one specific way to apply that idea. *OpenTV, Inc. v. Apple Inc.*, 2016 WL 344845, at *2 (N.D. Cal. Jan. 28, 2016) (characterizing the claims as reciting three steps: (1) "loading an interactive application with an associated credential," (2) "verifying the credential," and (3) "allowing an interactive application to perform one or more functions based on the permission information contained in the credential.").

In contrast, the claims here are not "directed to" the abstract idea of access controls generally. They are instead directed to the use of multiple, specific temporal access controls, including the retention and playback period, in a particular technical context. '522 Patent at 1:32-2:35 (describing issues in the digital television recording context), 3:10-32 (describing specific, claimed scenarios), 9:50-12:47 (describing the "structure of the copy control information"), and 22:1-4.

Nor do the Rental Expiration Patents preempt Fandango's abstract concept of managing the expiration of access periods for audio/video content. *See* Dkt. 50, Fandango's Reply Brief for its prior motion, at 12. For example, a provider of digital content could restrict access to a rented movie by (1) having the movie only accessible via streaming (i.e., no downloading or storing on the user end) and (2) employing only a single period of access time that is triggered solely on the purchase of the rented digital movie (i.e., no first and second periods).

Because the claims are directed to a concrete solution to the problem rather than to "the abstract idea of a solution to the problem in general," the analysis ends at step one. *Elec. Power Grp.*, 830 F.3d at 1356.

> **2.    *The Rental Expiration Patents Are Valid Under* Alice *Step-Two Because of the Inventiveness of the Particular Combination of Components.***

Should the Court reach step two, it should find that the claims are further eligible because they address a "problem specifically arising in the realm of computer networks" using a "solution … necessarily rooted in computer

16

technology." *DDR*, 773 F.3d at 1257. The problem of balancing the rights of content owners and viewers *in the context of digital content transmission* necessarily arises in that technical context. The proposed solution is likewise necessarily rooted in that technical context. Again, that solution includes the use of temporal (rather than number-based) copy restrictions and the use of two specific periods (retention and playback). The specification also expounds upon the various structure and content of the "control information" and its delivery (*see* '522 Patent at 9:50-12:47). The claimed solutions are therefore also eligible under step two of the *Alice* inquiry.

In its brief, Fandango argues that Rental Expiration Patents do not recite inventive concepts because, primarily, the "control information" element was allegedly well-known and conventional. Dkt. 89 at 17-22. In other words, Fandango appears to argues that the construction of control information, taken in context with "admissions" in the specifications, is dispositive to the Section 101 analysis.[7] Fandango is wrong.

However, the purported "admissions" in the specification do not result in the patent ineligibility conclusion that Fandango seeks. *See* Dkt. 89 at 17; *see also* Ex. A, Lipoff Dec., ¶¶36-37. The first set of statements Fandango cites relate to the number of permissible copies, not temporal restrictions. *See id.* at 17-18 (noting that the "transmission of 'copy control' information with audio/video data, which

---

[7] As Fandango also recognizes, there is an additional claim term ("a first period for retaining the audio/video information on the storage medium") that remains pending for the Court to construe. *See* Dkt. 89 at 17. However, the Court's construction of that term is not superfluous—it provides further detail, in the context of the claims, to the inventive concept in the Rental Expiration Patents and should be construed. During the meet and confer process for this motion, Maxell reminded Fandango of the Court's statements regarding the need to complete claim construction before addressing patent ineligibility of the Rental Expiration Patents, wanting to focus the Court's resources on claim construction. Fandango ignored Maxell's suggestion to wait until after the issuance of the Markman order and filed the pending motion over a month before the scheduled Markman hearing.

17

may include "codes of 'copy never' (copy inhibition), 'copy one generation' (for permitting only one copy), 'no more copies' (data once copied through 'copy one generation' is not permitted for more copies) and 'copy free' (approval of copying)"). This citation, 1:63-2:6 of the '522 Patent, follows a discussion of U.S. Patent No. 5,896,454 (Ex. F), which relates to primarily to copy-protection for compact discs (and mentions in passing digital broadcasts, such as HBO). Nowhere in this prior art reference is control information containing multiple temporal restrictions discussed. Fandango also relies on statements related to a prior art reference, JP-A-2000-149417, to establish that "'temporary recording' with copy control information was known." *Id.* at 18-19 (generally a temporal restriction of a "a limit of 90 minutes for instances is set to the period of reproduction and playback"). But, even in this second set of citations, Fandango takes a general concept and fails to appreciate the unconventional arrangement that the inventors of the '522 Patent set forth in the claims, particularly the last two limitations of representative Claim 13. *See* '522 Patent, 22:4-24. In sum, Fandango's citation of snippets of the Background of the Invention only underscore the patent eligibility of the Rental Expiration Patents.

The Court look no further than a few paragraphs after Fandango's specification citations to find where the inventors set forth the specific, claimed technological improvement over the prior art:

> In the light of the above problems, an object of the present invention is to provide more specifically a unit for preventing circulation of unauthorized copies and permitting the user to perform conditional playback and the like. … According to the invention, the effective period, available inside a recording medium, of information permitted for temporary recording is prescribed. The apparatus has a unit for disabling reproduction and playback after expiration of a prescribed time following recording initiation. Through this, the information

18

1    temporarily recorded on the medium can be prevented from being used

2    later for unauthorized purposes.

3   '522 Patent at 2:57-3:10. And the inventors reinforced the unconventionality of the

4   arrangement of the control information in solving the aforementioned problems by

5   developing multiple scenarios of playback, both with and without a grace period.

6   *See id.* at 3:10-32. These improvements—which demonstrate a specific solution to

7   a problem, using a specific, unconventional arrangement of the first and second

8   temporal periods (that are included in the control information) along with other

9   limitations—are then articulated in the claims. *See id.* at 22:4-24; *see also* Ex. A,

10  Lipoff Dec., ¶¶34-35, 38-41, 43-44.

11       And it is these statements in the specification Rental Expiration Patents that

12  should be taken as true when considering Fandango's motion. *See TriPlay*, 2018

13  U.S. Dist. LEXIS 49953, at *19; *see also Symantec*, 2018 U.S. Dist. LEXIS

14  122855, at *8-9 (noting at Step Two that "[t]he specification makes clear" that a

15  claimed concept was not present in the prior art).

16       As the Federal Circuit made clear, "[t]he inventive concept inquiry requires

17  more than recognizing that each claim element, by itself, was known in the art."

18  *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350

19  (Fed. Cir. 2016). In *Bascom*, the Federal Circuit considered claims of "filtering

20  Internet content," or "determining who gets to see what." *Id.* at 1346. Although "the

21  limitations of the claims, taken individually, recite generic computer, network, and

22  Internet components, none of which is inventive by itself," the Federal Circuit

23  nonetheless found the combination of these components to be an inventive concept.

24  *Id.* at 1349-50. The claims were directed to a specific method of filtering Internet

25  content which improved an existing technological process by installing a filtering

26  tool at a specific location. *Id.* at 1350-51. They did not "merely recite the abstract

27  idea of filtering content along with the requirement to perform it on the Internet."

28  *Id.* at 1350. "Nor do the claims preempt all ways of filtering content on the Internet;

1   rather, they recite *a specific, discrete implementation of the abstract idea* of

2   filtering content." *Id.* (emphasis added).

3       The claims of the Rental Expiration Patents, including representative Claim

4   13 of the '522 Patent recite a specific, discrete implementation of a technological

5   solution—a specific way of using temporal (rather than number-based) copy

6   restrictions and the use of two specific periods (retention and playback) in the

7   context of digital content transmission. *See* '522 Patent at 3:10-32. 22:4-24; *see*

8   *also* Ex. A, Lipoff Dec., ¶¶34-35, 38-41, 43-44. The unconventional arrangement of

9   claimed limitations is directed to specific processes and apparatuses that improve

10  existing technological processes and, accordingly, contain inventive concepts just

11  like the claims in *Bascom*. *See* 827 F.3d at 1350 ("an inventive concept can be

12  found in the non-conventional and non-generic arrangement of known,

13  conventional pieces"). Fandango fails to appreciate this key application of Section

14  101 law, omitting any discussion of *Bascom* in its brief. Moreover, the Court should

15  reject Fandango's additional step two arguments in Section 5.2.2 of the instant

16  motion, which are largely a rehash of its previous arguments here and in its earlier

17  brief. *Compare* Dkt. 89 at 19-21 with Dkt. 44 at 17-19. Fandango declares that the

18  claims recite "nothing more than the basic steps to accomplish the abstract idea,"

19  because they "require[] only generic technology" rather than "specific or

20  specialized hardware components or specialized technology." Dkt. 89 at 20. But, as

21  we have explained, the claims recite more than the basic steps always necessary to

22  implement the alleged abstract idea of "enforcing the expiration of access periods."

23  And there is no requirement that an eligible claim recite specialized hardware or

24  software. *See*, *e.g.*, *McRO*, 837 F.3d 1299 (holding a software method eligible);

25  *Enfish*, 822 F.3d 1327 (same); *Trading Techs.*, 675 F. App'x 1001 (holding that a

26  graphical user interface is eligible).

27      Accordingly, if the Court reaches the step two analysis, it should hold that

28  the particular combination of components in the asserted claims of the Rental

1    Expiration Patents recite significantly more than the abstract idea itself.

2    **IV.    Conclusion**

3           For the foregoing reasons, the Court should deny Fandango's motion because

4    Maxell's asserted patents are patent eligible subject matter under 35 U.S.C. § 101.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MAXELL'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 2:17-cv-07534-AG-(SSx)

1    Dated: August 16, 2018            Respectfully submitted,

2                                       MAYER BROWN LLP

3

4                                   By: */s/  Jamie B. Beaber*
                                            Jamie B. Beaber

5                                   Jamie B. Beaber (*Pro Hac Vice*)
                                      jbeaber@mayerbrown.com

6                                   Kfir B. Levy (State Bar No. 235372)
                                      klevy@mayerbrown.com

7                                   James A. Fussell, III (*Pro Hac Vice*)
                                      jfussell@mayerbrown.com

8                                   Tiffany A. Miller (*Pro Hac Vice*)
                                      tmiller@mayerbrown.com

9                                   Alison T. Gelsleichter (*Pro Hac Vice*)
                                      agelsleichter@mayerbrown.com

10                                 Saqib J. Siddiqui (*Pro Hac Vice*)
                                      ssiddiqui@mayerbrown.com

11                                   Justin Ilhwan Park (State Bar No. 250220)
                                      jpark@mayerbrown.com

12                                   Michael L. Lindinger (*Pro Hac Vice*)
                                      mlindinger@mayerbrown.com

13                                   **MAYER BROWN LLP**
                                      1999 K Street NW

14                                   Washington, DC 20006
                                      Phone: 202.263.3000

15                                   Amanda Streff Bonner (*Pro Hac Vice*)

16                                   asbonner@mayerbrown.com
                                    **MAYER BROWN LLP**

17                                   71 South Wacker Drive
                                    Chicago, IL 60606

18                                   Phone: 312.782.0600

19                                   David M. Stein, State Bar No. 198256

20                                   dstein@ggtriallaw.com
                                    **GREENBERG GROSS LLP**

21                                   650 Town Center Drive, Suite 1700
                                    Costa Mesa, California 92626

22                                   Phone: 949.383.2800
                                    Fax:     949.383.2801

23                                   Attorneys for Plaintiff MAXELL, LTD.

24

25

26

27

28

MAXELL'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 2:17-cv-07534-AG-(SSx)