UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-07534 AG (SSx) | Date | September 11, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

| Present: The Honorable | ANDREW J. GUILFORD | | |
|---|---|---|---|
| Lisa Bredahl | Not Present | | |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |

**Proceedings:** [IN CHAMBERS] ORDER REGARDING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. 89)

On October 13, 2017, Plaintiff Maxell, Ltd. filed this action for patent infringement, alleging that Defendant Fandango Media, LLC infringes seven U.S. patents. (*See* Dkt. 1.) On January 9, 2018, Fandango filed a Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6), arguing that all of the asserted claims of the asserted patents are invalid under 35 U.S.C. § 101. (Dkt. 44 ("Motion to Dismiss").) The Court found Claim 7 of the '679 Patent drawn to patent-ineligible subject matter and denied the remainder of the Motion to Dismiss. (Dkt. 66.)

After the parties filed a Joint Claim Construction and Prehearing Statement (Dkt. 76), Fandango filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) as to Counts I, II, and III of the Complaint. (Dkt. 89 ("Motion for Judgment on Pleadings").) Maxell filed an Opposition (Dkt. 93), and Fandango filed a reply. (Dkt. 96.)

The Court **GRANTS** Fandango's Motion for Judgment on the Pleadings. (Dkt. 89.)

1. **Background**

   1.1 **Relevant Asserted Patents**

Fandango moves for judgment on the pleadings as to three of the asserted patents: U.S. Patent Nos. 8,311,389 ("the '389 Patent"); 9,083,942 ("the '942 Patent"); and 9,773,522 ("the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | September 11, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

'522 Patent"). (Dkt. 89 at 1.) These three patents belong to the same patent family, share a common specification, and share the same title ("Digital Information Recording Apparatus, Reproducing Apparatus and Transmitting Apparatus"). The '522 Patent issued on September 26, 2017 and is a continuation of the '942 Patent. The '942 Patent issued on July 14, 2015 and is a continuation of the '389 Patent. The '389 Patent issued on November 13, 2012.

The '389, '942, and '522 Patents relate to allowing users to access digital content for a set period of time. Both Maxell and Fandango refer to them as the "Rental Expiration Patents." (*See generally*, Dkts. 89, 93.) These patents purport to balance concerns regarding unauthorized copies of copyrighted material and "user inconvenience" associated with time-limited transmissions of copyrighted, digital information. '522 Patent at 2:39–65. They do so in two different ways. The claims of the '389 Patent, for example, relate to a scenario where a user rents a video from an online service and the user's access to the video is disabled at the end of a predefined rental period (referred to as "the first period"), no matter whether the user has finished watching the video. '389 Patent at 19:5–31. The claims of the '942 and '522 Patents, meanwhile, focus more on the specification's purported concern of user inconvenience. If a user waits to start a video until near the end of the rental period, the claims of the '942 and '522 Patents allow the user to finish the video even after the rental period has ended in a manner that, according to the specification, "prevent[s] circulation of unauthorized copies and permit[s] the user to perform conditional playback." '522 Patent at 2:39–60.

### 1.2 Relevant Procedural History

In the Motion to Dismiss, Fandango argued that all of Maxell's asserted patents fail to claim patent eligible subject matter. In its opposition to the Motion to Dismiss, Maxell emphasized the claim term "control information" and argued that construction of the term might ultimately impact the patent eligibility analysis. (Dkt. 47 at 12.) Fandango replied that "Claim 13 requires only that the 'control information' include the retention and playback period" (Dkt. 50 at 12) and that these "non-technical concept[s]" should not influence patentability. *Id.* at 5–6. The Court's order emphasized that patent eligibility can be determined on a motion to dismiss "only when there are no factual allegations that, taken as true, prevent resolving the eligibility questions as a matter of law." (Dkt 66 at 4 (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018)).) The Court "decline[d] to make a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | September 11, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

patentability determination before construing this term ('control information') and further considering at least this potential factual dispute." (Dkt. 66 at 7.)

Following the Motion to Dismiss, the parties eventually agreed on a construction of the term "control information" for the '389, '942 and '522 Patents. (Dkt. 81 at 6.) Without a claim construction dispute remaining, Fandango contends that the '389, '942 and '522 Patents are ripe for eligibility review at the pleading stage. (Dkt. 89 at 2.)

**2.     Legal Standard**

   **2.1     Motion For Judgment On The Pleadings**

"Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks omitted). Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v, Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). In analyzing the complaint's sufficiency, a court must "accept[] all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). But "conclusory allegations of law and unwarranted inferences" are insufficient to avoid a dismissal. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation and internal quotation marks omitted).

"Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3rd Cir. 1988). Whether a claim is drawn to patent-eligible subject matter under § 101 is ultimately an issue of law that may be decided on a Rule 12(c) motion under certain circumstances. *See In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd, Bilski v. Kappos*, 561 U.S. 593, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | September 11, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

Generally, the court may not consider matters outside the pleading without converting a Rule 12(c) motion to a summary judgment motion under Rule 56. *See* Fed. R. Civ. P. 12(d). However, because claims construction is a question of law, *Markman v. Westview Instruments, Inc.* 52 F.3d 967, 970–71 (Fed. Cir. 1995), a court "may take notice of and rely on its claim construction opinion without converting Defendant's Motion into a motion for summary judgment." *Intellectual Ventures I LLC v. AT&T Mobility LLC*, 235 F. Supp. 3d 577, 588 (D. Del. 2016).

### 2.2  Patent Eligibility Under 35 U.S.C. § 101

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. "[T]his provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). The Supreme Court has established a two-part test for evaluating patent eligibility under § 101. "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296–97 (2012)). If so, courts move to the second step and ask, '[w]hat else is there in the claims before us?'" *Id.* To answer this second question, courts "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1297–98). "We have described step two of this analysis as a search for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1294). This second step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014). The Supreme Court has made clear, for example, that "the mere recitation of a generic computer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | September 11, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

can't transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358.

Patent eligibility is a question of law that may include underlying questions of fact. *Aatrix*, 882 F.3d at 1128 ("While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination."); *accord Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). The Federal Circuit has affirmed district courts' conclusions of patent ineligibility under § 101 at the pleading stage. *See, e.g.*, *Content Extraction*, 776 F.3d at 1349; *see also id.* ("Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101."). But recent Federal Circuit decisions have emphasized that patent eligibility can be determined on the pleadings "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125.

**3. Analysis**

**3.1 Representative Claim**

In its Motion for Judgment on Pleadings, Fandango proposes that Claim 13 of the '522 Patent should be treated as representative of the asserted claims of the '389, '942 and '522 Patents for purposes of the § 101 inquiry. (Dkt. 89 at 8–11.) Claim 13 of the '522 Patent states:

> 13. A method, comprising:
> transmitting audio/video information;
> receiving the audio/video information;
> storing the audio/video information on a storage medium; and
> reproducing the audio/video information from the storage medium
>     according to control information related to the audio/video
>     information,
> wherein the control information includes: a first period for retaining
>     the audio/video information on the storage medium, and a
>     second period, that begins at the start of an initial reproduction

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | September 11, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

>       of the audio/video information, for enabling a start of a
>       reproduction of the audio/video information stored on the
>       storage medium, and
>  wherein, in a case where an elapsed time from a retaining of the
>       audio/video information is within the first period and an
>       elapsed time from an initial reproduction of the audio/video
>       information is within the second period, enabling a
>       reproduction of the audio/video information, and, in a case
>       where a reproduction is started before the end of the first
>       period and the reproduction is continuing at the end of the first
>       period, enabling the reproduction to an end of the audio/video
>       information beyond the end of the first period, and thereafter
>       disabling a start of another reproduction of the audio/video
>       information even if an elapsed time from the initial
>       reproduction of the audio/video information is within the
>       second period.

'522 Patent at 21:63–22:24.

The other asserted claims in these three patents are:

| U.S. Patent No. | Asserted Claims |
|---|---|
| 8,311,389 (The '389 Patent) | 3*, 4, 7*, 8 |
| 9,083, 942 (The '942 Patent) | 1*, 2, 4*, 5, 7*, 8, 10*, 11, 13*, 14, 16*, 17, 19*, 20, 22*, 23 |
| 9,773, 522 (The '522 Patent) | 13*, 14, 16*, 17, 19*, 20, 22*, 23 |

(Dkt. 89 at 5 (the asterisks represent other independent claims).)

In its Opposition, Maxell first says it "does not disagree that the Court may treat Claim 13 of the '522 Patent as representative for the purposes of Fandango's 12(c) motion." (Dkt. 93 at 3.) But Maxell goes on to say, "given Fandango's focus on a representative claim, its comments regarding the other asserted claims (whether in the '522 Patent or the '389 and '942 Patents) are inappropriate and should be ignored." *Id.* at 4. Maxell then asserts that the Court can focus

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | September 11, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

on Claim 13 as representative, but can't "necessarily inject[] the other asserted claim into the Section 101 analysis." *Id.*

Like patent invalidity challenges under other grounds, an invalidity challenge under § 101 is generally analyzed on a claim-by-claim basis. But the Federal Circuit has acknowledged that the analysis can also be performed by way of representative claims. *See Content Extraction*, 776 F.3d at 1348 (finding representative claims appropriate where district court had found claims were "substantially similar and linked to the same abstract idea"); *Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative."). When parties agree to limit their eligibility arguments to certain representative claims, they are agreeing that "the eligibility of the remaining claims would stand and fall with those representative claims." *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 Fed. App'x 989, 993 (Fed. Cir. 2018).

Here, Maxell seems to be saying that the Court may treat Claim 13 as representative, but if the claim is found ineligible, a separate Section 101 analysis must be performed on each of the remaining asserted claims. Maxell can't have it both ways. By agreeing to a representative claim, Maxell can't then ask for each asserted claim to be individually analyzed. This would contradict the purpose of relying on a representative claim to perform a patent eligibility analysis. Even setting aside Maxell's assertion that it "does not disagree" that Claim 13 is representative, Maxell's conclusory remark that "the remaining asserted claims provide additional patent-eligible limitations" (Dkt. 93 at 3) does not present any "meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer*, 991 F.3d at 1365. Moreover, at the hearing, Maxell did not dispute that Claim 13 could be used as a representative claim and referenced Claim 13 as representative multiple times. Because Maxell does not clearly dispute that Claim 13 of the '522 Patent is representative of the asserted claims in the '389, '942 and '522 Patents, and upon reviewing the language of those claims (*see also* Dkt. 89-1), the Court finds it appropriate to designate Claim 13 of the '522 Patent as representative of the asserted claims of the '389, '942 and '522 Patents for purposes of its § 101 analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-07534 AG (SSx) | Date | September 11, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

### 3.2     *Alice/Mayo* Step One

Under step one of the *Alice/Mayo* analysis, the Court must "first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355.

At the outset of the *Alice/Mayo* step one section of its Opposition, Maxell concedes that at a high level, the claimed invention is directed to the general problem of "balancing the rights of content owners and consumers." (Dkt. 93 at 13.) But Maxell states that in the context of a digital video transmission system this problem requires a unique solution. *Id.* Maxell argues that the '389, '942 and '522 Patents uniquely solve this problem by "send[ing] content with detailed 'control information' that instructs the user's local system to enforce certain fine-grained, event-based temporal restrictions on data retention and playback." *Id.*

Maxell's purported solution, however, is abstract. The parties have agreed that "control information" means "information that includes a set of temporal restrictions." (Dkt. 81 at 6.) These temporal restrictions are simply rules that govern when data can be accessed. The concept of restricting access to data based on rules is something that the Federal Circuit has routinely held abstract. *See Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (finding the claims were directed to the abstract idea of "generating tasks [based on] rules … to be completed upon the occurrence of an event."); *Smartflash LLC v. Apple Inc.*, 680 Fed. App'x 977, 983–84 (Fed. Cir. 2017) (finding ineligible claims "directed to the abstract idea of conditioning and controlling access to data based on payment."); *SmartGene Inc. v. Advanced Biological Labs., SA*, 555 Fed. App'x 950, 954–55 (Fed. Cir. 2014) (finding ineligible claims directed to the abstract idea of comparing stored and input data and using rules to identify options). The concept of control information in particular is drawn to rules based on time ("temporal restrictions"). There is nothing in these set of rules that is tied to a particular technological improvement. *Cf. McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (finding eligible claims directed towards specific rules that allowed computers to produce animated characters in a way that could not previously be accomplished by human animators). Instead, implementing rules based on certain time constraints is something that has been practiced by humans in many contexts throughout human history.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | September 11, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

Indeed, Maxell's argument that the claims "find[] no analog" in brick-and-mortar examples is particularly unpersuasive. (Dkt. 93 at 13; *id.* at 13 n.5.) Maxell contends that "businesses could not impose event-based restrictions on playback or disable playback remotely." *Id.* at 14. But imposing specific event-based restrictions on activity is, again, something that humans have been doing in many contexts throughout human history. As just one example, retail stores regularly let customers finish their shopping and check out after the store has technically closed. A temporal restriction (store closing hours) is enforced but there is an optional, restricted "grace period" for customers to check out and grab any last items that allows for customer convenience without overly burdening the retail store (for instance, risking higher theft of merchandise if the store was open all night).

Although Maxell appears to take the position that the claims are drawn to a technical solution because they recite concepts of restrictions on *playback*, this is simply taking the same abstract idea discussed and limiting it to a technical field. *Elec. Power Grp., LLC v. Alstom S.A*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) ("limiting the claims to the particular technological environment of power-grid monitoring is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core"). That does not change the nature of the claims and the fact that the concept of temporal restrictions has "existed long before computers became ubiquitous." *Intellectual Ventures I LLC v. Erie Indem. Co.*, 200 F. Supp. 3d. 565, 575 (W.D. Penn. 2016).

Maxell attempts to address a similar argument in step two, but does not provide persuasive reasons to support its position. Maxell argues that the problem of balancing the rights of content owners and viewers in the context of digital content transmission necessarily arises in a technical context, and that the proposed solution is likewise rooted in that technical context (Dkt. 93 at 16–17.) But unlike the eligible claims in *DDR Holdings*, Claim 13 is not "necessarily rooted in computer technology." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Instead, it "merely claims a computerized solution to a longstanding problem that exists outside of computers", i.e., balancing the rights of property owners with that of user convenience. *Intellectual Ventures I LLC v. Erie Indem. Co.*, 711 Fed. App'x 1012, 1014–15 (Fed. Cir. 2017). As evidenced by the discussion of brick-and-mortar analogies, the idea of enforcing the expiration of access periods is not confined to the realm of computers. Maxell's arguments that the claims are directed to a technological improvement are not supported by the plain language of the claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | September 11, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

In the same vein, Maxell argues that there is no analog in the technological sphere as "then-existing computer technology . . . restricted only the *number of copies* that a user could make rather than *the time* at which she could make them." (Dkt. 93 at 14.) As an initial aside, the specification of the '522 Patent acknowledges that temporal periods for restricting access to content were known at the time of the invention. '522 Patent 2:15–35 ("JP-A-2000-149417 discloses a method . . . [where] a limit of 90 minutes for instance is set to the period for reproduction and playback . . . ."). More importantly, novelty is irrelevant to the identification of an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) ("We may assume that the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility."). Simply because something was not known in a technological field, *i.e.* novel, does not automatically make it a technological improvement. There is a distinction between claiming an improvement to computer functionality as compared to an improvement in the performance of "economic or other tasks for which a computer is used in its ordinary capacity." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016).

Maxell's opposition repeatedly makes the argument that Fandango has described the asserted claims at "a high-level of abstraction untethered from the language of the claims," leading to the incorrect conclusion on patent eligibility. (Dkt. 93 at 1 (citing *Enfish*, 822 F.3d at 1337).) Fandango characterizes the abstract idea embodied by the asserted claims as "enforcing the expiration of access periods for audio/video content." (Dkt. 89 at 4.) Maxell disagrees with this characterization and asserts that the claims are "directed to transmitting content with 'control information' that enforces a particular set of temporal restrictions, including at least a retention period and reproduction period."(Dkt. 93 at 15; *see also id.* at 16.) But as already explained, Maxell's characterization of the claims still shows that they are directed to abstract concepts. What Maxell is saying is that the claims are directed to a method for applying a set of time restriction rules to enforce access to content. This characterization does not reveal any technological improvement – it's just a more specific-sounding way to describe an abstract concept. *BSG Tech LLC v. Buyseasons, Inc.*, No. 2017-1980, 2018 WL 3862646, at *4 (Fed. Cir. Aug. 15, 2018) ("[A] claim is not patent eligible merely because it applies an abstract idea in a narrow way . . . to satisfy step one, the claim's focus must be on something other than the abstract idea itself.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | September 11, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

To the extent Maxell's characterization is an attempt to focus the claims on the concept of data transmission and how the control information is associated with the particular content of interest, this characterization isn't reflected by the plain claim language. As will be further discussed in *Alice* step two, Claim 13, for instance, recites the functional steps of "transmitting audio/visual information", "receiving audio/visual information", "storing audio/video information", and "reproducing audio/video information according to control information," with no information about how these functional steps must be achieved. '522 Patent 21:63–22:24. Claims directed towards functional language are more likely to result in patent ineligibility when those claims fail to explain how the claimed functions are performed. *Elec. Power Grp.*, 830 F.3d at 1356 ("Indeed, the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101 . . . .").

For similar reasons, Maxell's argument that Fandango "fail[s] to account for the specific requirements of the claims" by allegedly ignoring the "structure of the copy control information" is unpersuasive. (*See* Dkt. 93 at 15.) Maxell relies on Figure 9 of the '522 Patent specification to show the structure and complexity of "control information" and provide a basis for patent eligibility. But the parties have already agreed to the meaning of "control information" as simply "information that includes a set of temporal restrictions." The "structure" of the control information in Figure 9 is not recited in the claims. More importantly, all that Figure 9 shows is a list of data fields. It doesn't show a unique "structure." Instead, it appears to just shows different fields providing rules about time and permissions. (Dkt. 93 at 15 ("control information may include a number of fields defining specific temporal, event-based permissions . . . .").) Maxell's argument does not save the claims, either at step one or step two.

Finally, Maxell argues that the claims do not "preempt Fandango's abstract concept of managing the expiration of access periods for audio/video content." (Dkt. 93 at 16.) While preemption concerns are "the basis for the judicial exceptions to patentability…, the absence of complete preemption does not demonstrate patent eligibility." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015). Further, "where a patent's claims are deemed only to disclose patent ineligible subject matter under the *Alice* framework . . . preemption concerns are fully addressed and made moot." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | September 11, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

At the hearing, Maxell emphasized two main arguments under *Alice/Mayo* step one. First, Maxell argued that the fact that there are two claimed time periods in the patents provides an improvement over the prior art in the field of digital video transmission systems. Initially, the Court notes that the concept and logic Maxell relied on for this point are not necessarily reflected in the claim language of the '389 Patent. Unlike the '522 and '942 Patent claims, which use the second time period to facilitate a "grace period" for a user, the '389 Patent claims don't provide for a grace period at all. The '389 Patent claims only allow for reproduction of the recorded audio/video information when the information is accessed and fully played within the first time period. ('389 Patent 19:35-63). But this observation is beside the point. The concept of using two time periods to control access to data instead of one time period, as recited in the context of the claims, is still an abstract concept. The Court stated as much in its tentative order, but Maxell failed to respond to this assertion beyond repeating its argument that the Court's review of the claims was conducted as an unreasonably high level of abstraction (something the tentative also addressed). Maxell additionally failed to explain how the patent's disclosed concerns about copyright holder protection and user convenience relate to whether the patents are directed to *technological* improvements in the realm of digital video transmission systems. While the use of two time periods may be an improvement to copyright holder protection and user convenience in that two time periods were not previously used in the field, this does not save them from being abstract concepts.

Second, Maxell argued at the hearing that the brick and mortar analogies raised by Fandango and the Court are inappropriate because the claims require remote playback. While the claims do not specifically recite the requirement of "remote playback", Maxell contends that the recited "sending", "transmitting" and "receiving" steps in the claims are necessarily done remotely over a computer. Even accepting Maxell's position as true, the sending, transmission, and receiving of information over a computer network is merely the use of generic computer limitations that "do[ ] not make an otherwise ineligible claim patent eligible." *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016) (citing *DDR Holdings,* 773 F.3d at 1256). Further, the Court raised a new brick and mortar analogy at the hearing that *does* involve the concept of remote playback: Netflix mailing DVD rentals. To receive a DVD through Netflix, a user *remotely orders* copyrighted content, and that copyright holder's content is loaned to the user for a predetermined amount of time (with additional time or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | September 11, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

failure to return subject to a penalty). Maxell did not provide a response to this analogy or argue its inapplicability at the hearing.

For these reasons and others, the Court finds representative Claim 13 is directed to the abstract idea of applying a set of time restriction rules to enforce access to content and moves on to *Alice/Mayo* step two.

### 3.3  *Alice/Mayo* Step Two

At *Alice/Mayo* step two, the Court searches for an "'inventive concept'–i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the 'ineligible concept' itself." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1294).

Maxell's primary argument is that the Court cannot decide patent eligibility at this stage because a factual dispute remains about what is routine and conventional in the art. (Dkt. 93 at 11–12); *see Aatrix*, 882 F.3d at 1125 ("[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . only when there are no factual allegations that, taken as true, prevent resolving the eligibility questions as a matter of law."). Specifically, Maxell argues that a factual dispute remains as to "whether the asserted claims, as arranged with control information, are conventional and well-known . . . ." *Id.* at 5, 11–12.

Maxell's position regarding *Alice/Mayo* step two ignores the fact that "[t]he relevant inquiry is not whether the claimed invention as a whole is unconventional or non-routine." *BSG*, 2018 WL 3862646 at *7. After identifying an ineligible concept at step one, we ask at step two '[w]hat else is there in the claims before us?" *Mayo*, 566 U.S. at 78, 132 S.Ct. 1289. In *Alice*, "the Court only assessed whether the claim limitations *other than the invention's use of the ineligible concept to which it was directed* were well-understood, routine and conventional." *BSG*, 2018 WL 3862646 at *7 (emphasis added) (citing *Alice*, 134 S. Ct. at 2359–60).

Here, the identified ineligible concept is applying a set of time restriction rules to enforce access to content. In other words, using "control information" to enforce access to content. (*See* Dkt. 93 at 15 ("The illustrated control information may include a number of fields defining specific temporal, event-based permissions . . . .").) According to Maxell, the claimed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | September 11, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

invention "decouples various temporal copyrights, such as 'retention' rights, 'playback' rights, 'pause' rights, 'delayed start time' rights, and the like, which the rights holder can set separately using a specific type of '*control information*.'" (*Id.* at 2–3 (emphasis added) (citing '522 Patent at 9:60–12:47).) But these facts do not save the claims at step two. A more narrowly tailored and specific set of rules is a set of rules nonetheless and are themselves the abstract concept. Because "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept," *BSG*, 2018 WL 3862646 at *7, the Court must look to remaining claim limitations, excluding "control information."

Beyond "control information," Maxell doesn't argue that any of the other limitations of Claim 13 are unconventional, and the Court finds nothing in the claim that "requires anything other than a conventional computer and network components operating according to their ordinary functions." *Two-Way Media*, 874 F.3d at 1339. Indeed the specification does not describe any of the particular components as non-generic in any way or a specific way that the individual steps of Claim 13 must be achieved. '522 Patent 19:30-33 ("The invention may be embodied in other specific forms without departing from the spirit or essential characteristics. The present embodiment is therefore to be considered illustrative and not restrictive . . . .").

Maxell relies on the Federal Circuit's decision in *Bascom* for the assertion that "an inventive concept can be found in the nonconventional and non-generic arrangement of known, conventional pieces." (Dkt. 93 at 12 (citing *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility, LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).) But Maxell again fails to provide any concrete examples of *how* the claimed steps, even when considered as an ordered combination, recite more than conventional, routine and well-understood elements. As stated by many courts, merely reciting an abstract idea performed on a set of generic computer components does not contain an inventive concept. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011). Here, beyond arguing that control information consists of a particularized combination of rules that are unconventional (an argument this Court has rejected) Maxell fails to show that the claim "requires anything other than a conventional computer and network components operating according to their ordinary functions." *Two-Way Media*, 874 F.3d at 1339.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-07534 AG (SSx) | Date | September 11, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

At the hearing, Maxell urged the Court to consider Maxell's submitted expert report for its contention that the claimed steps were non-routine and unconventional. Maxell suggested that the unique nature of jurisprudence relating to § 101 disputes post-*Alice* allows the Court to consider evidence outside the pleadings even on a Rule 12(c) motion. It's not necessary for the Court to decide this issue. Even if the Court were to consider Mr. Lipoff's report, there would be no change in the outcome of this Order. Almost all of Lipoff's report is based on the opinion that "control information" is an unconventional element of the claims. As already explained, "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG,* 2018 WL 3862646 at *7.

Maxell also argued at the hearing that, accepting the statements in the patents as true at the Rule 12(c) stage, a question of material fact precludes dismissal because the patent specification characterizes the disclosed invention as providing improvements over the prior art. As Fandango aptly observed, it is common for a patent to describe the state of the art and the purported improvements over the prior art in the specification. In fact, the Manual of Patent Examination ("MPEP") specifically directs patent applicants to include information on the state of the art and improvements over the prior art.

> (b) The specification must set forth the precise invention for which a patent is solicited, in **such manner as to distinguish it from other inventions and from what is old.** It must describe completely a specific embodiment of the process, machine, manufacture, composition of matter or improvement invented, and must explain the mode of operation or principle whenever applicable. The best mode contemplated by the inventor of carrying out his invention must be set forth.
>
> (c) **In the case of an improvement, the specification must particularly point out the part or parts of the process, machine, manufacture, or composition of matter to which the improvement relates**, and the description should be confined to the specific improvement and to such parts as necessarily cooperate with it or as may be necessary to a complete understanding or description of it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-07534 AG (SSx) | Date | September 11, 2018 |
|---|---|---|---|
| Title | MAXELL, LTD. v. FANDANGO MEDIA, LLC | | |

*See* MPEP 608.1 ("Specification"); *see also* 37 CFR 1.71 ("Detailed description and specification of the invention") (emphasis added). It is possible that the patent specification in this case discloses an "improvement" to previous digital video transmission systems. It certainly states that it does. But the § 101 inquiry does not require just any "improvement." Indeed, "[w]e may assume that the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility." *SAP Am.,* 898 F.3d at 1163.

For these reasons and others, Claim 13 fails to recite an inventive concept and is ineligible under § 101.

Because "the eligibility of the remaining claims would stand and fall with those representative claims," *Automated Tracking Sols.*, 723 Fed. App'x at 993, the remaining asserted claims in the '389, '942 and '522 Patents are similarly found to encompass ineligible subject matter. The dependent claims of the '942 and '522 Patents put additional restrictions on the user in order to access the grace period, and the dependent claims of the '389 Patent require that the first period (or retention period) be longer than the second period (or playback permission period). In other words, they simply build on abstract concepts and do not offer other elements, either alone or considered as an ordered combination, that could be considered non-conventional.

**4.     Conclusion**

The Court **GRANTS** Fandango's Motion for Judgment on the Pleadings that the asserted claims in the '389, '942, and '522 Patents are invalid for failure to satisfy 35 U.S.C. § 101. Since this is a legal issue and amendment would be futile, leave to amend would be denied. In any event, such leave was not requested.

                                                                                                              :
                                                     Initials of Preparer